**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MICHAEL GORRIO,** | : | |
| **Plaintiff** | : | **No. 1:23-cv-01697** |
| | : | |
| **v.** | : | **(Judge Kane)** |
| | : | |
| **WARDEN GREG BRIGGS, <u>et</u> <u>al.</u>,** | : | |
| **Defendants** | : | |

**<u>MEMORANDUM</u>**

Currently before the Court is Defendants' motion to dismiss pro se Plaintiff's complaint.

For the reasons stated below, the Court will grant the motion in part and deny it in part. The

Court will also provide Plaintiff with the opportunity to file an amended complaint as to only

certain claims.

**I.      BACKGROUND**

Pro se Plaintiff Michael Gorrio ("Gorrio"), a convicted and sentenced state prisoner,

commenced this action by filing a complaint, an application for leave to proceed <u>in forma</u>

<u>pauperis</u> ("IFP Application"), and a certified prisoner trust fund account statement, all of which

the Clerk of Court docketed on October 12, 2023. (Doc. Nos. 1–3.) Between the caption and

body of the complaint, Gorrio names as Defendants: (1) Greg Briggs ("Briggs"), the Warden of

the Dauphin County Prison ("DCP"); (2) DCP Correctional Officers Edwin ("Edwin"),

Strawbridge ("Strawbridge"), Myers ("Myers"), and Jones ("Jones"); (3) John and Jane Doe

members of the DCP Board of Directors ("Doe Board Members"); (4) John and Jane Doe

members of DCP's Board of Commissioners ("Doe Commissioners"); (5) John and Jane Doe

Dauphin County "Solicitor's Office Officials" ("Doe Solicitors"); (6) John and Jane Doe DCP

medical personnel ("Doe Medical Personnel"); and (7) John and Jane Doe DCP "lieutenants,

captains, sergeants, and correctional officers" ("Doe Correctional Officials"). <u>See</u> (Doc. Nos. 1

at 1–3; 1-1 at 1–2.)[1]  Gorrio asserts claims against all Defendants in their individual and official capacities.  See (Doc. No. 1-1 at 2).

Gorrio alleges that on or about September 7, 2021, he "was confined to lock-in status due to a misconduct/incident report alleging" that he was fighting.  See (id. at 5–6; Doc. No. 1 at 4). Gorrio remained on "PHC Prehearing Confinement Status" for forty-one (41) days without being provided with a misconduct hearing and "without implicit justification," which was "well beyond the prescribed federal period of (2) two weeks."  See (Doc. Nos. 1 at 4; 1-1 at 6).  Due to "this illicit and unlawful confinement [he] accrued sum [sic] (11) eleven misconduct/incident reports," resulting in him spending approximately ten-and-a-half (10 ½) months or three hundred (300) days in the "Restricted Housing Unit/Lock-in Unit."  See (Doc. Nos. 1 at 4; 1-1 at 6).

On September 27, 2021, at approximately 8:30 a.m., Edwin removed Gorrio and his cellmate from their cell without following "RHU security procedures and provisions."  See (Doc. No. 1-1 at 3).  At some point, Gorrio began to return to his cell, and Edwin told him that he was going to throw Gorrio's legal work away and "no more suing the doc bitch."  See (id. at 4). Edwin also told Gorrio to "go the fu** back in before I have to fu** you up now."  See (id.).

Defendant John Doe Sergeant then entered Gorrio's cell for a "de facto cell inspection." See (id.)  After the inspection concluded, Gorrio's cellmate was handcuffed and escorted to "P2 Unit."  See (id.).  Similarly, Gorrio was handcuffed and had to carry his property while being escorted by Edwin.  See (id.).  While being escorted, Edwin told Gorrio, "Comply and we will not fu** you over too bad.  This may hurt a little but I think you're a big boy."  See (id.).  The other correctional officers escorting Gorrio then started to "chuckle."  See (id.).  Gorrio asked

---

[1]  Gorrio used the form complaint for prisoners asserting civil rights actions (Doc. No. 1), and he attached to that form a hand-written complaint (Doc. No. 1-1).

what Edwin was talking about, and "this officer" replied that he was talking about "nothing at all. You are face down a** up." See (id.). Upon hearing this, Gorrio became nervous. See (id.).

Edwin then instructed Gorrio to remove his clothing and Gorrio complied. See (id.). Edwin activated his body camera and asked Gorrio whether he had "more contraband." See (id.). Edwin retrieved three (3) cable wires from Gorrio after which Gorrio stated that he did not have any additional contraband. See (id.). Nevertheless, upon further search, Edwin "discovered a plastic bag which contained Gorrio's earbuds and personal contact information located on [sic] [his] shorts." See (id.). Gorrio admitted to having possessed the cable wires and "asked . . . Edwin to flush it." See (id.).

Instead of "flush[ing] it," Edwin reached for his handcuffs and placed one on Gorrio's wrist, causing Gorrio to ask Edwin what he was doing. See (id.). Edwin then told Gorrio to stop resisting and proceeded to push Gorrio to the corner of the cell, over a desk, and onto the floor. See (id.). Three (3) or more other correctional officers rushed from behind to "a defenseless Gorrio," and proceeded to "strike [him] repeatedly in the face, neck, head, arms, and body[,] causing chronic injuries." See (id.).[2] While being struck, Gorrio "screamed 'ah, you're hurting me! You're hurting me! Stop punching me!'" See (id. at 5). He also "felt officers grab his a**." See (id.).

Gorrio avers that the "attack" lasted several minutes, after which he was escorted barefoot down several sets of stairs to "P3 Unit." See (id.). While being escorted, Gorrio told Edwin that he would "see him again," and then turned and said to Myers, "Both of you." See

---

[2] In Gorrio's form complaint, he alleges that Edwin, Strawbridge, Myers, and Jones physically assaulted him. See (Doc. No. 1 at 4). However, in his handwritten complaint, Gorrio does not identify any of Defendant officers other than Edwin and Jones. See (Doc. No. 1-1 at 4, 6).

(id.).  At this point, Gorrio was at the entrance to the door on "P Level," and Edwin kneed Gorrio in the face, "cracking multiple teeth."  See (id.).  Although Gorrio alleges that he received no medical attention on that date, "photographs were captured of [his] injuries."  See (id.).  Along with his physical injuries due to Defendants' conduct, Gorrio asserts that he suffers from "extreme night terrors in addition to mental health diagnoses and complications . . . including: posttraumatic stress disorder, disturbia, antisocial personality disorder, oppositional defiance disorder, anxiety, paranoia, depression, attention deficit hyperactivity disorder[,] and schizophrenic/sociopathic tendencies."  See (id.).

While he was away from his cell, Gorrio's "legal documentation pursuant to courthouse action [sic]," such as his "exhibits, criminal complaint, writ of habeas corpus documentation[,] and motions were destroyed."  See (id.).  This destruction "impeded the submission of documents to the court and adherence to deadlines."  See (id.).

On November 20, 2021, at approximately 10:00 p.m., Jones arrived at Gorrio's cell to conduct an "alleged cell search."  See (id. at 6).  Jones told Gorrio that "he [was] going to fu** [Gorrio] up [] and then fu** him."  See (id.); see also (Doc. No. 1 at 4 (alleging that Jones "made sexually provocative remarks and gestures to [Gorrio] within his housing quarters")).  Jones then proceeded to "illegitimately confiscate [Gorrio's] shower shoe for no apparent or justifiable reason."  See (Doc. No. 1-1 at 6).  He also told Gorrio that "he runs this jail and [Gorrio] does not know who he is messing with."  See (id. (alteration in original)).

In addition to the above events, Gorrio alleges that on October 13, 2021, and December 23, 2021, Gorrio received mail "via electronic communication forwarded directly to his tablet."  See (id.).  Thereafter, "such correspondences were duplicated in electronic PDF format on

numerous occasions each day without justification."  See (id.); see also (Doc. No. 1 at 4 (alleging

that "his mail was duplicated repeatedly")).

Gorrio avers that Briggs, the Doe Commissioners, and the Doe Solicitors "have first[-

]hand knowledge of the illegitimate and illicit practices which are utilized at all levels of [the

DCP] and intentionally and vociferously fail to rectify violations of state and constitutional law."

See (Doc. No. 1-1 at 7).  He further alleges that:

> It is routine practice for officers to apply excessive force without repercussions[.]
> Further, this allows officers, sergeants, lieutenants and administrative personnel at
> all levels to apply a carte blanche method of operating the [DCP], and thus
> dispelling all former rules, regulations, policies, and procedures.
>
> . . . Not only do DCP officials regularly disregard those policies in effect
> constituting violations of state and constitutional law, but they openly authorize a
> mentality of lawlessness amongst prison authorities thereby jeopardizing the care,
> custody, and control of all inmates at the facility.  Respectively[,] it is well known,
> and the laughing stock [sic] and inside joke at the prison for authorities to greet
> each other with the phrase "lawless" where in exchange the corresponding officer
> will reply "lawless."  This mantra and motto has [sic] essentially been adopted by
> the prison and all persons working at such an enterprise.  The nature of this
> operation is unacceptable and it is reflective in the way that illicit practices are
> continually "swept under the rug" without reprimand to include discrepancies [sic]
> of excessive use of force[,] assault and battery perpetuated by officers against
> inmates and what makes matters worse is CID[,] the Correction Investigative
> Department[,] refuses to adequately investigate matters or "get involved" with the
> affairs of the institution/prison.
>
> . . . Finally, the grievance system provides no adequate remedy or contention [sic]
> of matters as it is frowned upon and indubitably extinguished in its forthright.  All
> grievances consecutively filed by [Gorrio] at the DCP either were not responded to,
> responded to and thereafter disregarded/not responded to, and/or denied in-and-of-
> themself [sic] thereby decreeing a morale [sic] of lawlessness.

See (id.).

Based on these factual allegations, Gorrio purports to assert numerous causes of action

against Defendants.  See (id. at 8–11; Doc. No. 1 at 5).  As best the Court can discern, Gorrio

attempts to proceed with the following causes of action (as he describes them) under 42 U.S.C. §

1983 and Pennsylvania state law:

- Against Briggs, Edwin, Strawbridge, and Myers: (1) Unlawful retaliation and deprivation of free speech in violation of the First Amendment; (2) Violations of the Due Process Clauses of the Fifth and Fourteenth Amendments; (3) Unreasonable search and seizures in violation of the Fourth Amendment; and (4) "Retaliation against a victim" in violation of the Eighth Amendment. See (Doc. No. 1-1 at 8).

- Against Briggs, Edwin, Strawbridge, Myers, and Jones: (1) Sexual harassment and sexual assault in violation of the Eighth Amendment; (2) Negligent endangerment of another person; and (3) Reckless endangerment of another person. See (id. at 8–9).

- Against Briggs, Edwin, Strawbridge, Myers, Jones, and Doe Correctional Officials: (1) Failure to intervene in violation of the Eighth Amendment; (2) Respondeat superior in violation of the Eighth Amendment; (3) Deliberate indifference to safety and healthcare in violation of the Eighth Amendment; (4) Obstruction of justice in violation of the Eighth Amendment; (5) Medical malpractice and deliberate indifference to his serious medical needs in violation of the Eighth Amendment; (6) Unlawful conditions of confinement in violation of the Eighth Amendment; and (7) Assault and battery. See (id.).

- Against Briggs, Edwin, Strawbridge, Myers, Jones, and "John and Jane Doe Defendants": (1) Intentional infliction of emotional distress ("IIED"); (2) Negligence; (3) Contributory negligence; (4) Breach of contract; (5) Breach of the covenant of good faith; (6) Breach of contract "implied per se"; (7) False misrepresentation; and (8) False imprisonment. See (id. at 9–11).

For relief, Gorrio seeks compensatory damages, punitive damages, reimbursement of the costs of

the action, and "permanent injunctions to all care[,] custody[,] and control policies at [DCP] to

ensure the safety and security of all inmates." See (id. at 11–12).

On January 29, 2024, the Court issued an Order which, inter alia, granted the IFP

Application and directed the Clerk of Court to send waiver of service forms to Defendants.

(Doc. No. 7.) After receiving an extension of time to respond to the complaint, Defendants

Briggs, Edwin, Strawbridge, Myers, and Jones (hereinafter collectively referred to as

"Defendants") filed a motion to dismiss the complaint for the failure to state a claim on June 6,

2024.  (Doc. No. 17.)  Defendants filed a brief in support of their motion on June 20, 2024.

(Doc. No. 18.)  After receiving an extension of time, Gorrio filed a brief in opposition to the

motion to dismiss on August 8, 2024.  (Doc. No. 21.)  Defendants filed a reply brief in further

support of their motion to dismiss on August 22, 2024.  (Doc. No. 22.)  Defendants' motion to

dismiss is now ripe for disposition.

## II.    LEGAL STANDARDS

### A.    Motions to Dismiss Under Rule 12(b)(6)

Federal notice and pleading rules require the complaint to provide the defendant notice of

the claim and the grounds upon which it rests.  See Phillips v. County of Allegheny, 515 F.3d

224, 232 (3d Cir. 2008).  The plaintiff must present facts that, accepted as true, demonstrate a

plausible right to relief.  See Fed. R. Civ. P. 8(a).  Although Federal Rule of Civil Procedure

8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled

to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure

12(b)(6) for "failure to state a claim upon which relief can be granted."  See Fed. R. Civ. P.

12(b)(6).

When ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all

factual allegations in the complaint and all reasonable inferences that can be drawn from them,

viewed in the light most favorable to the plaintiff.  See In re Ins. Brokerage Antitrust Litig., 618

F.3d 300, 312 (3d Cir. 2010).  The Court's inquiry is guided by the standards of Bell Atlantic

Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009).  Under

Twombly and Iqbal, pleading requirements have shifted to a "more heightened form of

pleading."  See Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).  To prevent

dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is

facially plausible.  See id.  The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct.  As the Supreme Court instructed in Iqbal, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  See Iqbal, 556 U.S. at 679 (alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)).  Accordingly, to determine the sufficiency of a complaint under Twombly and Iqbal, the Third Circuit Court of Appeals has identified the following steps a district court must take under Rule 12(b)(6): (1) identify the elements a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief."  See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (quoting Iqbal, 556 U.S. at 679).  When following these steps, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."  See Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

In addition, in the specific context of pro se prisoner litigation, the Court must be mindful that a document filed pro se is "to be liberally construed."  See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Higgs v. Att'y Gen., 655 F.3d 333, 339–40 (3d Cir. 2011) (explaining that "when presented with a pro se litigant, we have a special obligation to construe [their] complaint liberally" (citation and internal quotation marks omitted)).  Therefore, a pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers."  See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks

omitted) (quoting <u>Estelle</u>, 429 U.S. at 106).  This means the Court must always "remain flexible, especially 'when dealing with imprisoned pro se litigants . . . .'"  <u>See</u> <u>Vogt v. Wetzel</u>, 8 F.4th 182, 185 (3d Cir. 2021) (quoting <u>Mala v. Crown Bay Marina, Inc.</u>, 704 F.3d 239, 244–45 (3d Cir. 2013)).  Moreover, when construing a pro se complaint, the court will "apply the relevant legal principle even when the complaint has failed to name it."  <u>See</u> <u>Mala</u>, 704 F.3d at 244.  However, pro se litigants "'cannot flout procedural rules—they must abide by the same rules that apply to all other litigants.'"  <u>See</u> <u>Vogt</u>, 8 F.4th at 185 (quoting <u>Mala</u>, 704 F.3d at 245).

### B.   Review Under 28 U.S.C. § 1915(e)(2)(B)

Because the Court granted Gorrio leave to proceed <u>in</u> <u>forma</u> <u>pauperis</u> (Doc. No. 7), the Court "shall dismiss the case <u>at any time</u> if the court determines that . . . the action . . . fails to state a claim upon which relief may be granted[] or . . . seeks relief against a defendant who is immune from such relief."  <u>See</u> 28 U.S.C. § 1915(e)(2)(B)(ii)–(iii) (emphasis added).  In reviewing a plaintiff's legal claims under Section 1915(e)(2)(B)(ii), the Court applies the aforementioned standard governing Rule 12(b)(6) motions to dismiss.  <u>See, e.g.</u>, <u>Smithson v. Koons</u>, No. 15-cv-01757, 2017 WL 3016165, at *3 (M.D. Pa. June 26, 2017) ("The legal standard for dismissing a complaint for failure to state a claim under . . . § 1915(e)(2)(B)(ii) . . . is the same as that for dismissing a complaint pursuant to [Federal Rule of Civil Procedure] 12(b)(6)."), <u>report and recommendation adopted</u>, 2017 WL 3008559 (M.D. Pa. July 14, 2017).

### C.   Section 1983

Section 1983 is the statutory vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials.  <u>See</u> 42 U.S.C. § 1983. This statute states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to

be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

See id.  "Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors."  See Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting Gonzaga Univ. v. Doe, 536 U.S. 273, 284–85 (2002)).  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  West v. Atkins, 487 U.S. 42, 48 (1988).

## III.    DISCUSSION

### A.    Defendants' Motion to Dismiss[3]

In their motion to dismiss, Defendants move to dismiss Gorrio's complaint for several reasons.  (Doc. No. 18 at 12–28.)  First, they assert that Gorrio has failed to exhaust his administrative remedies.  (Id. at 12–13.)  Second, they contend that they are entitled to qualified immunity as to Gorrio's Section 1983 claims and immunity under Pennsylvania's Political Subdivision Torts Claims Act, 42 Pa. C.S. §§ 8541–64 ("PSTCA"), as to his Pennsylvania state-law claims.  (Id. at 13–16.)  Third, they argue that Gorrio has not alleged any plausible claim for relief against them.  (Id. at 16–26.)  Fourth, and finally, they maintain that Gorrio cannot recover punitive damages against them.  (Id. at 26–28.)  The Court will address these arguments in turn; however, before doing so, the Court notes two (2) areas of concern with the parties' submissions.

---

[3] Although this section of the Memorandum is devoted to addressing Defendants' motion to dismiss, the Court will also screen certain claims under Section 1915(e)(2)(B).

The Court first notes that Gorrio's complaint appears to take what has been described as a "shotgun approach" or "kitchen-sink approach" to pleading.  See Shotgun Pleading, Black's Law Dictionary (12th ed. 2024) (defining "shotgun pleading" as "[a] pleading that encompasses a wide range of contentions, [usually] supported by vague factual allegations").  Although the Court recognizes Gorrio's pro se status and the Court's resulting obligation to liberally construe the allegations in his complaint, his attempt to raise every cause of action he seemingly could conceivably think of, or locate, despite several of those causes of action either clearly not pertaining to the factual allegations in the complaint, not providing a vehicle for him to obtain relief, or not existing, is wholly unacceptable.  As another Pennsylvania federal district court has soundly explained:

> the Court cannot countenance Plaintiff's attempted invocation of every statutory and legal precept he can conceive of.  See discussion supra (noting Plaintiff's flirtation with, among other things, "[the] Whistle Blower Act, OSHA Act, FELA Act," and "[the] color of law [doctrine]").  "The essence of liberal construction is to give a pro se plaintiff a break when, although he stumbles on a technicality, his pleading is otherwise understandable."  Greer v. Chicago Bd. of Educ., 267 F.3d 723, 727 (7th Cir. 2001) (citation to quoted source omitted).  A lawsuit, however, "is not a game of hunt the peanut," id., and construing pro se leniency so broadly would pervert the intention of the rule and thwart the interests of justice.  See Douglas v. Ratliff, 2009 WL 3378672, *11 (S.D. Oh. Oct. 20, 2009) (strongly disfavoring "shotgun" approach to pleading, where plaintiff "throw[s] everything against the wall and hop[es] some[thing] sticks") (citation to quoted source omitted).[4]  Indulging Plaintiff's approach also unduly prejudices Defendant, as

---

[4]  In the face of similar allegations, the Douglas Court aptly observed:

> While the Court recognizes that pro se pleadings are entitled to a liberal construction, plaintiff['s] allegation of a multitude of potential causes of action improperly places the onus on the Court to sift through the pleadings to determine which facts are material to the particular causes of action [potentially] asserted. . . . In addition to watering down the rights of the parties to have valid claims litigated efficiently—whether the plaintiff's or the defendant's—shotgun pleadings wreak havoc on the judicial system.  [These c]ases . . . consume an inordinate amount of a court's time.  As a result, justice is delayed, if not denied, for litigants who are standing the queue waiting to be heard.  Their impressions of the court's ability to take care of its business can hardly be favorable.  As the public becomes aware of

counsel must either allow Plaintiff to lead her around by the nose, or face a potential adverse ruling should she choose not to chase down every rabbit hole.

See Houser v. Donahoe, No. 12-cv-01024, 2013 WL 6838699, at *4 (W.D. Pa. Dec. 27, 2013) (alterations and footnote in original), aff'd sub nom. Houser v. Postmaster Gen. of U.S., 573 F. App'x 141 (3d Cir. 2014) (unpublished).

The relevant factual allegations from Gorrio's complaint are not difficult to discern or particularly lengthy. Yet, Gorrio attempts to turn those allegations into no less than twenty-six (26) federal and state causes of action, several of which, as explained below, have no connection to the factual allegations in this case. This is improper, and Gorrio is admonished that if his future filings follow a similar approach, the Court will take appropriate action, which could include, inter alia, dismissing an amended complaint sua sponte under Section 1915(e)(2)(B), to ensure that the interests of justice and judicial economy are properly served in this case. See, e.g., Rutko v. Merck Sharp & Dohme, LLC, No. 24-cv-01187, 2024 WL 4608187, at *7 (E.D. Pa. Oct. 28, 2024) (explaining that courts have used Federal Rule of Civil Procedure 10(b) to dismiss a pro se complaint generally "in combination with other defects in the complaint that in combination made response impossible, or to discourage 'shotgun' pleadings); Embree v. Wyndham Worldwide Corp., 779 F. App'x 658, 662 (11th Cir. 2019) (unpublished) (pointing out that "shotgun pleading[s]" do not comply with Rule 8(a), Rule 10(b), or both, and "fail[] to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests").

---

the harm suffered by the victims of shotgun pleading, it, too, cannot help but lose respect for the system.

Id. at *11 & n.3 (citation to quoted source omitted).

Second, as to Defendants, the Court notes that they are understandably placed in a difficult situation when a pro se plaintiff such as Gorrio asserts so many causes of action because they must decide whether to "chase down every rabbit hole" or risk an adverse ruling by this Court. See id. Nevertheless, parties represented by counsel are expected to identify the applicable law and submit sufficiently developed legal arguments in their briefing to the Court, especially in the types of cases where certain legal issues repeatedly arise, such as in prisoner civil rights litigation. As explained below, in many respects, that simply did not occur here, particularly in Defendants' brief in support of their motion to dismiss.[5]

### 1.    Failure to Exhaust Administrative Remedies

Defendants move to dismiss Gorrio's complaint because they believe he failed to exhaust his administrative remedies under the Prison Litigation Reform Act ("PLRA"). (Doc. No. 18 at 12–13.) They argue that Gorrio "fails to aver that he has in fact exhausted administrative remedies for any . . . grievance . . .; rather, [he] repeatedly requests that such remedies be deemed exhausted," which they believe "is a legal conclusion masquerading as a factual averment." See (id. at 12); see also (id. at 13 ("Plaintiff has not averred he exhausted administrative remedies – rather he makes arguments for the court to excuse this requirement without basis in fact or law.")). They also contend that "[e]xhaustion is a jurisdictional issue, a question of law for the Court to resolve." See (id.). Defendants request the Court to take judicial notice of Briggs's affidavit to their motion to dismiss because it "is integral to the claims in the complaint." See (id. at 13 (citing Coman v. ACA Compliance Grp., No. 21-cv-00976, 2021 WL 5910420 (W.D. Pa. Dec. 14, 2021)). The Court will deny this part of Defendants' motion.

---

[5] To the extent that Defendants attempted to add arguments via their reply brief, the Court has not considered any new arguments therein except to the extent that they are responsive to Gorrio's arguments in his opposition brief.

### a.    Administrative Exhaustion Under the PLRA

The PLRA states that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." See 42 U.S.C. § 1997e(a). Stated differently, the exhaustion of available administrative remedies is a prerequisite for a prisoner asserting a claim under Section 1983 regarding their prison conditions. See Rinaldi v. United States, 904 F.3d 257, 265 (3d Cir. 2018); see also Ross v. Blake, 578 U.S. 632, 638 (2016) (reiterating that the PLRA's "language is 'mandatory': An inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies" (quoting Woodford v. Ngo, 548 U.S. 81, 85 (2006))); Jones v. Bock, 549 U.S. 199, 211 (2007) (stating that "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court" (citation omitted)); Booth v. Churner, 532 U.S. 731, 733–34 (2001) (stating that the PLRA "now requires a prisoner to exhaust 'such administrative remedies as are available' before suing over prison conditions" (quoting 42 U.S.C. § 1997e(a))).

"The PLRA requires proper exhaustion, meaning 'complet[ing] the administrative review process in accordance with the applicable procedural rules.'" Downey v. Pa. Dep't of Corr., 968 F.3d 299, 305 (3d Cir. 2020) (alteration in original) (quoting Woodford, 548 U.S. at 88). "These applicable procedural rules are supplied by the individual prisons." Id. (citations omitted); see also Spruill v. Gillis, 372 F.3d 218, 222 (3d Cir. 2004) (stating that "the determination [of] whether a prisoner has 'properly' exhausted a claim . . . is made by evaluating the prisoner's compliance with the prison's administrative regulations governing inmate grievances"); Jones, 549 U.S. at 218 (explaining that "[t]he level of detail necessary in a grievance to comply with the

grievance procedures will vary from system to system and claim to claim"); Woodford, 548 U.S. at 90 (indicating that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules").  A prisoner's failure to follow a prison's procedural rules will result in a procedural default of their claims.  See Spruill, 372 F.3d at 230–32 (concluding that PLRA's exhaustion requirement includes procedural default component); see also Drippe v. Tobelinski, 604 F.3d 778, 781 (3d Cir. 2010) (pointing out that Spruill held "that the PLRA includes a procedural default component and the determination whether a prisoner properly exhausted a claim is made by evaluating compliance with the prison's specific grievance procedures").  A procedural default may be excused, however, if the prisoner can show that the administrative remedies were unavailable to them.  See Rinaldi, 904 F.3d at 266 ("The PLRA requires only 'proper exhaustion,' meaning exhaustion of those administrative remedies that are 'available.'" (quoting Woodford, 548 U.S. at 93)).  "Available means capable of use; at hand." Small v. Camden County, 728 F.3d 265, 271 (3d Cir. 2013) (internal citations and quotation marks omitted).  "An administrative remedy is unavailable when it 'operates as a simple dead end[,] . . . is so opaque that it becomes, practically speaking, incapable of use, or when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'" Downey, 968 F.3d at 305 (alterations in original) (quoting Shifflett v. Korszniak, 934 F.3d 356, 365 (3d Cir. 2019)).  "Although the availability of administrative remedies to a prisoner is a question of law, it necessarily involves a factual inquiry."  Small, 728 F.3d at 271.

### b.    Analysis of Defendants' Arguments

#### (1)    Gorrio's Failure to Plead Exhaustion

Defendants assert that Gorrio fails to plead that he exhausted his administrative remedies at DCP.  See (Doc. No. 18 at 12, 13).  However, prisoners do not have an affirmative duty to plead administrative exhaustion.  See Jones, 549 U.S. at 216 ("We conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specifically plead or demonstrate exhaustion in their complaints."); see also Small, 728 F.3d at 268 ("Failure to exhaust [administrative remedies] is an affirmative defense the defendant must plead and prove; it is not a pleading requirement for the prisoner-plaintiff."  (citations omitted)).  Therefore, Gorrio's failure to affirmatively plead that he fully exhausted his administrative remedies is not a basis for dismissal.

#### (2)    Lack of Jurisdiction Due to the Failure to Exhaust

Defendants argue that "[e]xhaustion is a jurisdictional issue" and that this Court "has no jurisdiction until" Gorrio fully exhausts his administrative remedies under the PLRA.  See (Doc. No. 18 at 13).  "The failure to exhaust administrative remedies under the PLRA . . . does not deprive federal courts of subject-matter jurisdiction."  See Coutinho-Silva v. Ramirez, No. 17-cv-00378, 2017 WL 5588211, at *7 (M.D. Pa. Nov. 2, 2017) (citing Nyhuis v. Reno, 204 F.3d 65, 69 n.4 (3d Cir. 2000)), report and recommendation adopted, 2017 WL 5588179 (M.D. Pa. Nov. 20, 2017); see also Woodford, 548 U.S. at 101 (explaining that "even if dismissals under § 1997e(c)(2) typically occur when the opportunity to pursue administrative remedies has passed, § 1997e(c)(2) still serves a useful function by making it clear that the PLRA exhaustion requirement is not jurisdictional"); Nyhuis, 204 F.3d at 69 n.4 ("[W]e agree with the clear majority of courts that § 1997e(a) is not a jurisdictional requirement, such that failure to comply

with the section would deprive federal courts of subject matter jurisdiction."); <u>Richardson v. Goord</u>, 347 F.3d 431, 433–44 (2d Cir. 2003) (holding that PLRA exhaustion does not constitute a jurisdictional requirement).[6]  As such, even if Gorrio failed to exhaust his administrative remedies, this failure would not deprive the Court of jurisdiction to hear this case.

<div align="center">

**(3)    Failure to Exhaust as Basis for Dismissal of Gorrio's State and Federal Claims**

</div>

Defendants contend that the Court should dismiss Gorrio's complaint in its entirety due to his purported failure to exhaust.  <u>See</u> (Doc. No. 18 at 13 ("The Plaintiff has failed to exhaust remedies . . ., and this matter should be dismissed.")).  Even if the Court agreed with Defendants' exhaustion argument, which it does not, any failure to exhaust would apply only to Gorrio's Section 1983 claims and not to his state-law claims.

The PLRA states that "[n]o action shall be brought with respect to prison conditions under <u>section 1983 of this title, or any other Federal law</u> by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  <u>See</u> 42 U.S.C. § 1997e(a).  This statutory language is clear insofar as the PLRA's exhaustion requirement applies only to a prisoner's claims under Section 1983 "or any other Federal law."  <u>See id.</u>; <u>see also</u> <u>Talley v. Pa. Dep't of Corr.</u>, No. 19-cv-01589, 2024 WL 1253626, at *6 n.12 (E.D. Pa. Mar. 21, 2024) ("The DOC Defendants appear to argue that this failure to exhaust bars all of Plaintiff's claims.  But the exhaustion requirement does not sweep so far.  As the plain text of the PLRA makes clear, the exhaustion requirement only applies to claims 'under section 1983 of this title, or any other <u>Federal law</u>.'" (quoting 42 U.S.C. § 1997e(a))); <u>cf. Griffin</u>

---

[6]  Failure to fully exhaust a state-law tort claim under the Federal Tort Claims Act ("FTCA") would deprive a federal district court of subject-matter jurisdiction to entertain that claim.  <u>See</u> <u>White-Squire v. U.S. Postal Serv.</u>, 592 F.3d 453, 457 (3d Cir. 2010).

<div align="center">17</div>

v. Bryant, 56 F.4th 328, 335 n.6 (4th Cir. 2022) ("By its terms, the PLRA's exhaustion requirement applies not only to claims pursued under § 1983 . . . but also applies to claims initiated under "any other Federal law," including Griffin's claim under the ADA and the Rehabilitation Act. (quoting 42 U.S.C. § 1997e(a))).

The Third Circuit Court of Appeals has not squarely addressed whether PLRA exhaustion applies to a prisoner's state-law claims.  See Spencer v. Bush, 543 F. App'x 209, 213 (3d Cir. 2013) (unpublished) (declining to "decide whether state law claims must be exhausted under the PLRA" because the district court "should have declined to exercise supplemental jurisdiction over those claims" upon dismissal of the only federal claims).  Nevertheless, other Judges in this District have concluded that the PLRA's exhaustion requirement does not apply to a prisoner-plaintiff's state-law claims.  See, e.g., Reyan v. Pa. Dep't of Corr., No. 18-cv-01485, 2020 WL 7049535, at *14 (M.D. Pa. Nov. 12, 2020) ("Based on the plain language of the PLRA, the exhaustion requirement does not apply to state law claims." (citing Barrick v. Prison Health Sys./Med., No. 07-cv-00163, 2008 WL 5225806, at *4 n.4 (W.D. Pa. Dec. 15, 2008), aff'd, 335 F. App'x 153 (3d Cir. 2009) (unpublished))), report and recommendation adopted, 2020 WL 7048283 (M.D. Pa. Dec. 1, 2020); Douglas v. Joseph, No. 13-cv-01136, 2016 WL 561944, at *5 (M.D. Pa. Feb. 12, 2016) ("Although Douglas is proceeding in federal court, he is pursuing state-law claims.  Thus, section [1997e(a)] does not apply."), aff'd, 656 F. App'x 602 (3d Cir. 2016) (unpublished).  Additionally, it appears that every court of appeals or district court to have addressed this issue has concluded that PLRA exhaustion does not apply to a prisoner-plaintiff's state-law claims.  See Pierce v. Rowland, No. 20-5731, 2021 WL 3929549, at *6 (6th Cir. Sept. 2, 2021) (unpublished) ("Since the PLRA's exhaustion requirement applies to actions brought under federal law, Pierce's state law claims . . . remain viable." (citation omitted)); McDaniel v.

Meisner, 617 F. App'x 553, 556 n.3 (7th Cir. 2015) (unpublished) ("[T]he [PLRA] do not apply

to state-law claims."); Brady v. Ill. Dep't of Corr., No. 23-cv-00295, 2024 WL 4263103, at *6

(S.D. Ill. Sept. 23, 2024) ("The PLRA's exhaustion requirements apply only to claims brought

under federal law – not to a pure state law claim such as [the] negligence claim here."); Maea v.

Pfeiffer, No. 22-cv-00362, 2024 WL 3985766, at *6 (E.D. Cal. Aug. 29, 2024) ("The PLRA does

not apply to state law claims." (citations omitted)); Sodemann v. Melnick, No. 22-cv-00374,

2024 WL 2110140, at *2 (W.D. Wis. May 10, 2024) ("As for plaintiff's state-law claims, the

PLRA's exhaustion requirement does not apply."); Shaheed-Muhammad v. Dipaolo, 393 F. Supp.

2d 80, 92 n.5 (D. Mass. 2005) (rejecting defendants' argument that "the strictures of the PLRA

apply to plaintiff's state law claims"); Nunez v. Goord, 172 F. Supp. 2d 417, 430 (S.D.N.Y.

2001) ("As [the plaintiff's] cause of action alleging negligence does not invoke § 1983, or any

other federal law, it is not subject to § 1997e(a)'s exhaustion requirement.").  Therefore, even if

the Court determined that Gorrio failed to exhaust his administrative remedies while at DCP, it

would not warrant dismissal of his state-law claims.

### (4)    Consideration of Briggs's Affidavit in Analyzing Exhaustion

Defendants submitted an affidavit from Briggs in which he indicates that, inter alia, the

DCP has a four (4)-step grievance process and DCP records show that Gorrio did not complete

"the four-stage grievance procedure regarding any of the 26 issues alleged in Paragraph 28

through Paragraph 53 of his Complaint prior to filing his lawsuit on October 12, 2023."  See

(Doc. No. 17-1 ¶¶ 4–6).  Defendants argue that the Court can consider Briggs's affidavit because

it is purportedly "integral to the claims of the complaint."  See (Doc. No. 18 at 13).

Briggs's affidavit "is not an indisputably authentic document on which [Gorrio's] claim is

based.  Thus, it cannot be considered in connection with the defendant's 12(b)(6) motion."  See

Coutinho-Silva, 2017 WL 5588211, at *7; see also Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014) ("The defendants in this case attached several different kinds of documents to their motions to dismiss.  Some, like the affidavits attached by the . . . defendants, clearly may not be considered at this stage."); Berry v. Klem, 283 F. App'x 1, 4 (3d Cir. 2008) (unpublished) ("Even if the grievances, appeals, and responses are indisputably authentic . . . the declarations are evidentiary materials that cannot be considered on a motion to dismiss.").[7]  If the Court were to consider Briggs's affidavit, the Court would have to convert this portion of Defendants' motion to dismiss into a motion for summary judgment.  See Fed. R. Civ. P. 12(d) (providing that "[i]f, on a motion under Rule 12(b)(6) . . ., matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56" and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion"); Breeland v. Baker, 439 F. App'x 93, 94–95 (3d Cir. 2011) (unpublished) (concluding that "[t]he District Court properly recognized that, in order to consider [the prison grievance coordinator]'s verification [stating that the plaintiff had failed to exhaust administrative remedies] along with the other grievance-related documents, the court would have to convert [defendant]'s Rule 12(b)(6) motion into one for summary judgment"); see also Greer v. Smith, 59 F. App'x 491, 492 (3d Cir. 2003) (unpublished) (determining that the district court erred in considering affidavit outside the pleadings to resolve defendant's Rule

---

[7]  In support of their argument that the Court can consider Briggs's affidavit, Defendants cite to Coman v. ACA Compliance Grp., No. 21-cv-00976, 2021 WL 5910420 (W.D. Pa. Dec. 14, 2021).  See (Doc. No. 18 at 13).  Coman, however, has no applicability to Defendants' argument about Briggs's affidavit.  In Coman, the Western District analyzed whether it could consider the plaintiff's charge of discrimination filed with the Equal Employment Opportunity Commission, which was attached to the defendant's motion to dismiss.  See 2021 WL 5910420, at *2.  While perhaps Coman would serve as persuasive authority in support of this Court considering Gorrio's grievance filings, it does not stand for the proposition that this Court can consider a likely attorney-drafted affidavit in support of a defendant's motion to dismiss.

12(b)(6) motion raising a failure to exhaust defense, without first converting the motion to dismiss into a motion for summary judgment and providing an opportunity for plaintiff to engage in discovery).

The Court also declines to convert Defendants' motion to dismiss into a motion for summary judgment so the Court could consider the failure-to-exhaust defense at this time. Although Defendants have submitted Briggs's affidavit, they have not submitted the DCP's grievance policy or copies of Gorrio's grievances.  In addition, to the extent the Court grants Gorrio leave to file an amended complaint, converting Defendants' motion would unnecessarily delay this case when neither the Court nor Defendants know what Gorrio will decide to include in an amended complaint.  Accordingly, the Court will exercise its discretion and decline to convert this part of Defendants' motion to dismiss into a motion for summary judgment.  See Escalera v. Harry, No. 15-cv-02132, 2016 WL 6694502, at *7 (M.D. Pa. Sept. 28, 2016) (indicating that district court has discretion to decide whether to convert motion to dismiss into a motion for summary judgment, recommending that motion to dismiss not be converted into a motion for summary judgment, and providing detailed explanation in support of recommendation), report and recommendation adopted, 2016 WL 6582065 (M.D. Pa. Nov. 7, 2016); see also Yuratovich v. U.S. Dep't of Just., No. 13-cv-05651, 2015 WL 8328328, at *3 (D.N.J. Dec. 8, 2015) (stating that if defendant presents documents outside the pleadings in connection with a Rule 12(b)(6) motion to dismiss, the "Court has discretion to either convert the motion to dismiss into a motion for summary judgment, or to ignore the matters presented outside the pleadings and continue to treat the filing as a motion to dismiss").

(5)    **Obviousness of the Failure to Exhaust from the Face of the Complaint**

Since the Court cannot consider Briggs's affidavit in ruling on Defendants' Rule 12(b)(6) motion to dismiss, the Court could only dismiss Gorrio's Section 1983 claims in the complaint if it was obvious from the face of complaint that Gorrio failed to exhaust his administrative remedies. See Talley v. Clark, 111 F.4th 255, 264 (3d Cir. 2024) ("[W]here a prisoner's failure to exhaust under the PLRA is 'apparent from the face of the complaint,' a district court may dismiss it on that basis." (quoting Ray v. Kertes, 285 F.3d 287, 297 (3d Cir. 2002))). It is not obvious from the complaint that Gorrio failed to exhaust his administrative remedies at DCP. Although Defendants correctly point out that Gorrio's averments that his grievances are deemed exhausted are conclusory, Gorrio provides almost an entire page of factual allegations relating to actions he took when filing grievances and what occurred with those grievances, which could conceivably show he exhausted his claims if the Court had more information about those grievances and the DCP's grievance system. See (Doc. No. 1 at 2–3). However, Gorrio did not provide specific information about what the DCP's four (4) step process entails, the substance of his grievances, or the substance of the responses he received to those grievances. As such, the complaint simply does not provide enough information for this Court to be able to conclude that Gorrio failed to exhaust his administrative remedies at DCP for his Section 1983 claims. Accordingly, the Court will deny Defendants' motion insofar as they argue that Gorrio's failure to exhaust administrative remedies warrants dismissal of his complaint.

2.    **Qualified Immunity**

As noted supra, Defendants move for dismissal of Gorrio's federal claims because of qualified immunity. (Doc. No. 18 at 13–15.) For the reasons provided below, the Court will deny this part of Defendants' motion.

22

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). To determine whether a right was clearly established, the Court must ask "whether it would be clear to a reasonable officer that [their] conduct was unlawful in the situation [they] confronted." See Schmidt v. Creedon, 639 F.3d 587, 598 (3d Cir. 2011) (internal quotation marks omitted) (quoting Saucier v. Katz, 533 U.S. 194, 202 (2001)). "If it would not have been clear to a reasonable officer what the law required under the facts alleged, then [they are] entitled to qualified immunity." Id. In other words, for a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." See al-Kidd, 563 U.S. at 741. "This demanding standard protects 'all but the plainly incompetent or those who knowingly violate the law.'" District of Columbia v. Wesby, 583 U.S. 48, 63 (2018) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)). Accordingly, "there must be sufficient precedent at the time of action, factually similar to the plaintiff's allegations, to put [the] defendant on notice that his or her conduct is constitutionally prohibited." See Mammaro v. N.J. Div. of Child Prot. & Permanency, 814 F.3d 164, 169 (3d Cir. 2016) (quoting McLaughlin v. Watson, 271 F.3d 566, 572 (3d Cir. 2001)). In making this determination, the Court looks to applicable Supreme Court precedent, but if none exists, "a 'robust consensus of cases of persuasive authority' in the Court[s] of Appeals could clearly establish a right for purposes of qualified immunity." See id. (quoting Taylor v. Barkes, 575 U.S. 822, 826 (2015)).

The inquiry into whether a right is clearly established "do[es] not require a case directly on point," instead, "existing precedent must have placed the statutory or constitutional question

beyond debate." See White v. Pauly, 580 U.S. 73, 79 (2017) (internal quotation marks omitted) (quoting Mullenix v. Luna, 577 U.S. 7, 12 (2015)).  The clearly established law "must be 'particularized' to the facts of the case," and the presentation of a unique set of facts by a case is an "important indication" that a defendant's conduct at issue did not violate a "clearly established" right.  See id. at 79–80 (internal quotation marks omitted) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).  However, a constitutional deprivation that occurs under unique factual circumstances does not necessarily warrant an automatic grant of qualified immunity.  See Hope v. Pelzer, 536 U.S. 730, 741 (2002) (holding that "officials can still be on notice that their conduct violates established law even in novel factual circumstances").  There may be the rare "obvious case," where "a body of relevant case law" is not necessary, see Brosseau v. Haugen, 543 U.S. 194, 199 (2004), especially when the case in question presents "extreme circumstances" to which "a general constitutional rule already identified in the decisional law may apply with obvious clarity."  See Taylor v. Riojas, 592 U.S. 7, 8–9 (2020) (internal quotation marks omitted) (quoting Hope, 536 U.S. at 741).

In this case, other than reciting what they believe to be the applicable law on qualified immunity, Defendants' entire argument concerning Gorrio's fifteen (15) purported Section 1983 claims is the following: "The factual circumstances were not so clear that the Defendants were unreasonable per se in the search and seizure of contraband, use of force in response to resistance, or [Gorrio's] confinement for fighting."  See (id. at 15).  This single-sentence, conclusory argument is insufficient to warrant this Court dismissing Gorrio's federal claims due to qualified immunity.  See, e.g., McCottrell v. White, 933 F.3d 651, 670 n.12 (7th Cir. 2019) ("In the final sentence of their brief on appeal, the defendants also assert that they were 'at least entitled to qualified immunity.' Perfunctory and undeveloped arguments are waived, and we need

not consider this single-sentence argument further." (internal citation omitted)); St. Clair v. Harris, No. 21-cv-01837, 2023 WL 4086286, at *16 n.16 (W.D. Pa. June 20, 2023) ("The Court is especially hesitant to conduct a qualified immunity analysis given Defendant Harris' undeveloped argument on its application.").

Defendants "bear the burden of persuasion under each prong" of the qualified immunity analysis, see Anglemeyer v. Ammons, 92 F.4th 184, 188 (3d Cir. 2024) (citing Mack v. Yost, 63 F.4th 211, 227 (3d Cir. 2023)), yet do not cite any precedent showing whether the rights Gorrio claims they violated were clearly established at the time of the alleged violations.  In addition, although Defendants contend that Gorrio has failed to state a plausible Section 1983 claim against any of them, they do not mention in a non-conclusory fashion whether he has sufficiently alleged the denial of a statutory or constitutional right as part of their qualified immunity argument.  Moreover, Defendants do not attempt to separately analyze Gorrio's allegations against each Defendant.  See Grant v. City of Pittsburgh, 98 F.3d 116, 123 (3d Cir. 1996) (explaining that district courts "should analyze separately the conduct of each [defendant] against the constitutional right allegedly violated" when assessing multiple defendants' assertion of a qualified immunity defense).  As such, Defendants have essentially "pass[ed] off the necessary research and analytical work," see Yentzer, 2022 WL 903937, at *5, to the Court relating to their qualified immunity defense, and the Court will not do their work for them.  Accordingly, to the extent Defendants assert that they are entitled to qualified immunity from Gorrio's Section 1983 claims, the Court will deny their motion to dismiss.[8]

---

[8]  The Court recognizes that district courts are encouraged to resolve questions of qualified immunity "at the earliest possible stage in litigation."  See Hunter v. Bryant, 502 U.S. 224, 227 (1991).  However, "in the vast majority of cases," it is impossible to resolve the issue without developing a factual record.  See Newland v. Reehorst, 328 F. App'x 788, 791 n.3 (3d Cir. 2009) (unpublished) ("[I]t is generally unwise to venture into a qualified immunity analysis at the

### 3.    The PSTCA

As indicated above, Gorrio raises numerous state-law tort claims against Defendants. The Court has screened these claims under Section 1915(e)(2)(B) and will dismiss most of them because Defendants are immune from them under the PSTCA.[9]

The PSTCA grants municipalities, municipal agencies, and municipal officers acting in an official capacity immunity from liability for all state-law tort claims, unless the plaintiff shows their "injury was caused by the negligent acts of the local agency or an employee thereof" and falls within one (1) of nine (9) enumerated exceptions.  See 42 Pa. C.S. § 8541 ("Except as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person."); id. § 8545 ("An employee of a local agency is liable for civil damages on account of any injury to a person or property caused by acts of the employee which are within the scope of [their] office or duties only to the same extent as [their] employing local agency and subject to the limitations imposed by this subchapter.").  The nine (9) enumerated exceptions to the PSTCA are: (1) vehicle liability; (2) care, custody, control of

---

pleading stage."); Thomas v. Indep. Twp., 463 F.3d 285, 291 (3d Cir. 2006) (determining that qualified immunity should be applied at the pleading stage "only when the immunity is established on the face of the complaint" (quoting Leveto v. Lapina, 258 F.3d 156, 161 (3d Cir. 2001))).

[9] Defendants also move to dismiss Gorrio's state-law claims due to PSTCA immunity.  See (Doc. No. 18 at 13, 15–16).  However, Defendants did not fully develop their arguments in this regard insofar as they, inter alia, (1) sought immunity for Gorrio's breach of contract claims along with his tort claims even though PSTCA immunity applies only to tort claims, (2) did not discuss most of Gorrio's specific tort claims or distinguish those claims as asserted against specific Defendants, and (3) distinguish between Gorrio's individual- and official-capacity tort claims.  Nevertheless, because it is obvious from the face of the complaint that the PSTCA impacts most of Gorrio's state-law tort claims, the Court is addressing those claims pursuant to the Court's screening authority under Section 1915(e)(2)(B).

personal property; (3) real property; (4) trees, traffic controls and street lighting; (5) utility service facilities; (6) streets; (7) sidewalks; (8) care, custody or control of animals; and (9) sexual abuse.  See id. § 8542(b)(1)–(9).  These exceptions are to be "strictly construed and narrowly interpreted."  See Weaver v. Franklin County, 918 A.2d 194, 200 (Pa. Commw. Ct. 2007).

In addition, the PSTCA limits the amount and types of recoverable damages.  See 42 Pa. C.S. §§ 8549, 8553.  However, "if the act of the employee caused the injury and that . . . act constituted a crime, actual fraud, actual malice or willful misconduct," the PSTCA's provisions pertaining to official liability generally, the defense of official immunity, indemnity, and the limitation on damages "shall not apply."  See id. § 8550.

Starting with Gorrio's state-law tort claims against Defendants in their official capacities, the PSTCA bars his IIED, false imprisonment, assault and battery, and false/fraudulent misrepresentation claims because the PSTCA provides an exception for Defendants' official immunity only for "negligent acts," which do not "include acts or conduct which constitute a crime, actual fraud, actual malice or willful misconduct."  See 42 Pa. C.S. § 8542(a)(2); see also Feistl v. Luzerne Intermediate Unit, No. 14-cv-00491, 2016 WL 1162325, at *5 (M.D. Pa. Mar. 24, 2016) (granting motion to dismiss plaintiff's state-law intentional tort claims including, inter alia, IIED against individual defendants in their official capacities "on the basis of PSTCA immunity"); Royer v. Robertson, No. 22-cv-00061, 2023 WL 6319982, at *19 (W.D. Pa. Sept. 28, 2023) (granting motion to dismiss plaintiff's state-law tort claims for false imprisonment, assault and battery, and IIED, against individual defendants in their official capacities because the PSTCA also bars such claims against the defendants' employing municipality).  Additionally, Gorrio's state-law tort claims for negligence, medical malpractice, and negligent entrustment do

not fit into any of the nine (9) exceptions in Section 8542(b).  Thus, the PSTCA also bars those claims.[10]

Concerning Gorrio's state-law claims against Defendants in their individual capacities, the PSTCA bars his claims for medical malpractice, negligent endangerment, and negligence because those causes of action do not involve acts constituting a "crime, actual fraud, actual malice, or willful misconduct."[11]  See 42 Pa. C.S. § 8550; see also Cupp on behalf of Cupp v. County of Lycoming, No. 20-cv-01784, 2021 WL 4478304, at *8 (M.D. Pa. Sept. 30, 2021) (concluding that two (2) physicians providing medical services at a county jail were "immune from medical negligence claims under the [PSTCA]").  On the other hand, at least on their face, the PSTCA would not bar Gorrio's state-law claims for false imprisonment, IIED, false/fraudulent misrepresentation, and assault and battery because they are intentional torts.  See Watson v. Witmer, 183 F. Supp. 3d 607, 616 (M.D. Pa. 2016) (concluding that PSTCA did not bar plaintiff's claims for false arrest, false imprisonment, malicious prosecution, and IIED

---

[10]  The Court will not address whether the PSTCA applies to Gorrio's reckless endangerment and contributory negligence claims here because neither is a viable civil claim under Pennsylvania law.  See Muhammad v. City of Lewisburg, No. 21-cv-00284, 2023 WL 8153734, at *3 (M.D. Pa. Jan. 13, 2023) (determining that plaintiff's state-law reckless endangerment claim "fails because [plaintiff] is trying to recover under a state criminal statute" and "[t]here is no civil remedy for reckless endangerment" (citing Climo v. Rustin, No. 11-cv-01339, 2012 WL 3779178, at *30–31 (W.D. Pa. Aug. 31, 2012))), report and recommendation adopted, 2023 WL 8153813 (M.D. Pa. Feb. 14, 2023); Marisco v. Marisco, No. 14-cv-00397, 2015 WL 3466159, at *3 (W.D. Pa. June 1, 2015) (explaining that contributory negligence is a "defense[] raised by defendants in tort actions"); see also Pa. R. Civ. P. 1030(b) (listing contributory negligence as an "affirmative defense").  The Court will dismiss Gorrio's reckless endangerment and contributory negligence claims for the failure to state a claim under Section 1915(e)(2)(B)(ii).

[11]  Gorrio asserts a medical malpractice claim but identifies it as a Section 1983 Eighth Amendment claim.  See (Doc. No. 1 at 9).  Because there is no Section 1983 claim for medical malpractice, see Jack v. Rivello, No. 24-cv-01495, 2024 WL 5058771, at *4 (M.D. Pa. Dec. 10, 2024) ("[M]ere negligence, or even medical malpractice, is not itself a constitutional violation . . . ."), the Court construes this claim as a state-law claim for medical malpractice.

because they are intentional torts); <u>Cogley v. Fundark</u>, No. 23-cv-01152, 2025 WL 39975, at *1 (W.D. Pa. Jan. 7, 2025) (agreeing with report recommending that defendant's motion to dismiss seeking dismissal of plaintiff's state-law assault and battery claim be denied because "assault and battery is an intentional tort to which immunity under the PSTCA does not extend"); <u>Penn Mut. Life Ins. Co. v. BNC Nat'l Bank</u>, No. 10-cv-00625, 2010 WL 3489386, at *6 (E.D. Pa. Sept. 2, 2010) (explaining that "[f]raudulent misrepresentation is an intentional tort" (citation omitted)). Accordingly, the Court concludes that the PSTCA bars Gorrio's state-law tort claims except for his false imprisonment, IIED, fraudulent misrepresentation, and assault and battery claims against Defendants in their individual capacities.

### 4.   Punitive Damages

Defendants move to dismiss Gorrio's claims against them for punitive damages. <u>See</u> (Doc. No. 18 at 26–28). They argue that Gorrio is prohibited from recovering punitive damages from them under Section 1983 to the extent Gorrio asserts claims against them in their official capacities. <u>See</u> (<u>id.</u> at 26). They also allege that Gorrio's allegations are insufficient to demonstrate an entitlement to punitive damages against them to the extent he has sued them in their individual capacities. <u>See</u> (<u>id.</u> at 27–28). The Court will grant this part of Defendants' motion relating to Gorrio's request for punitive damages against them in their official capacities under Section 1983 but will deny the motion to the extent that they challenge Gorrio's request for punitive damages against them in their individual capacities.

Defendants correctly point out that Gorrio cannot recover punitive damages against them in their official capacities under Section 1983. <u>See</u> <u>City of Newport v. Fact Concerts, Inc.</u>, 453 U.S. 247, 267–68 (1981) (holding that municipalities are immune from punitive damages due to the bad-faith actions of their officials); <u>Doe v. County of Centre</u>, 242 F.3d 437, 455 (3d Cir.

29

2001) (noting that <u>City of Newport</u> "stands for the proposition that municipalities, and more broadly, state and local governmental entities, are immune from punitive damages" under Section 1983); <u>Gregory v. Chehi</u>, 843 F.2d 111, 120 (3d Cir. 1988) ("Punitive damages cannot be recovered from defendants in their official capacities" under section 1983).  As for Gorrio's claims for punitive damages against them in their individual capacities, Gorrio's allegations pertaining to Edwin kneeing him in the face and the group assault he experienced are sufficient at this stage to warrant denying Defendants' motion to dismiss his punitive damage claims against them in their individual capacities.  <u>See</u> <u>Miller v. TJX Cos., Inc.</u>, No. 19-cv-00252, 2019 WL 1168120, at *9 (E.D. Pa. Mar. 12, 2019) (deciding not to dismiss punitive damages claim where plaintiff alleged that "he was intentionally assaulted"); <u>Bonilla v. City of York</u>, No. 14-cv-02238, 2015 WL 1525483, at *10 (M.D. Pa. Apr. 2, 2015) ("[The] facts supporting the claim for excessive force also establish Plaintiff's state law claims for assault and battery . . . and leave open the possibility of recovery of punitive damages against [defendants] in their individual capacities."); <u>see also</u> <u>Reilly v. Jones</u>, No. 21-cv-01521, 2022 WL 1508964, at *3 (M.D. Pa. May 12, 2022) ("[I]t is premature to dismiss the allegations of recklessness and claim for punitive damages before discovery can reveal the presence or absence of conduct evidencing the requisite improper motive or reckless indifference on the part of the defendants.").

### 5.    Failure to State a Claim

#### a.    Section 1983 Claims

##### (1)    Respondeat Superior

Defendants move to dismiss Gorrio's Section 1983 "respondeat superior" claim because it is not a cognizable claim, and he has not included any factual allegations constituting a plausible supervisory claim against Briggs.  <u>See</u> (Doc. No. 18 at 21–22).  The Court agrees.

To the extent Gorrio attempts to hold Briggs responsible simply because he is the warden of DCP, he cannot do so because liability under Section 1983 cannot be predicated on respondeat superior.  See Chavarriaga v. N.J. Dep't of Corr., 806 F.3d 210, 227 (3d Cir. 2015) ("[Plaintiff] cannot predicate liability on her § 1983 claims on a respondeat superior basis." (citing Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (emphasis omitted)); Robinson v. Delbalso, No. 22-2378, 2022 WL 17248100, at *2 (3d Cir. Nov. 28, 2022) ("We agree with the District Court that Robinson's second amended complaint did not state a plausible claim for relief.  First, he failed to allege the defendants' personal involvement, and he cannot predicate liability on his § 1983 claims on a respondeat superior basis." (internal citations omitted)).  Instead, if Gorrio seeks to hold Briggs liable for unconstitutional acts by his subordinates, such as Edwin, Strawbridge, Myers, or Jones, his allegations must satisfy one of two theories of supervisory liability: first, "[i]ndividual defendants who are policymakers may be liable under § 1983 if it is shown that such defendants, with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm[;]" and second, "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations."  See A.M. ex rel. J.M.K. v. Luzerne County Juv. Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004) (citation omitted); Barkes v. First Corr. Med., Inc., 766 F.3d 307, 316 (3d Cir. 2014) (explaining requirements for supervisory liability in section 1983 claim and describing "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates"), rev'd on other grounds sub nom. Taylor v. Barkes, 575 U.S. 822 (2015).

To allege a plausible claim for supervisory liability under the first theory—the policy-and-practice strand of supervisory liability—a plaintiff such as Gorrio must:

> (1) identify the specific supervisory practice or procedure that the supervisor failed to employ, and show that (2) the existing custom and practice without the identified, absent custom or procedure created an unreasonable risk of the ultimate injury, (3) the supervisor was aware that this unreasonable risk existed, (4) the supervisor was indifferent to the risk; and (5) the underling's violation resulted from the supervisor's failure to employ that supervisory practice or procedure. Put another way, the inmate must identify the supervisor's specific acts or omissions demonstrating the supervisor's deliberate indifference to the inmate's risk of injury and must establish a link between the supervisor, the act, and the injury.

See Chavarriaga, 806 F.3d at 227 (quoting Brown v. Muhlenberg Twp., 269 F.3d 205, 216 (3d Cir. 2001)).

For the second theory of supervisory liability—participating in, directing others to, or knowledge and acquiescence of constitutional violation—generalized allegations that a supervisory defendant is "in charge of" or "responsible for" an office or facility are insufficient to allege personal involvement in an underlying constitutional violation.  See Saisi v. Murray, 822 F. App'x 47, 48 (3d Cir. 2020) (unpublished) ("Saisi asserted that some defendants were in charge of agencies that allowed this to happen, and that liability stemmed merely from defendants' 'belief' that their conduct would be 'tolerated.' However, a director cannot be held liable 'simply because of [their] position as the head of the [agency].'" (quoting Evancho v. Fisher, 423 F.3d 347, 354 (3d Cir. 2005))); Zigler v. Warren, No. 21-cv-19474, 2022 WL 903383, at *2 (D.N.J. Mar. 28, 2022) ("In simpler terms, a supervisor is not liable for the unconstitutional conduct of his employees solely because he is a supervisor.").  Additionally, "[a]lthough a court can infer that a defendant had contemporaneous knowledge of wrongful conduct from the circumstances surrounding a case, the knowledge must be actual, not constructive."  See

Chavarriaga, 806 F.3d at 222 (citing Baker v. Monroe Twp., 50 F.3d 1186, 1194 (3d Cir. 1995);

Rode, 845 F.2d at 1201 n.6).

In this case, Gorrio's allegations in the complaint do not state a plausible supervisory

liability claim under either of the two theories described above.  Gorrio does not include any

factual allegations about Briggs participating in violating his rights by being personally involved

in any of the events described in the complaint.  Gorrio also does not allege facts that would

show that Briggs knew the actions that would be taken against Gorrio, such as the events that

allegedly occurred on September 27, 2021.  Thus, the only way this Court could determine that

Gorrio pleaded a plausible supervisory liability claim is if he maintained a policy, practice,

custom that caused constitutional harm.  He has failed to do so here because his allegations about

DCP maintaining a "routine practice for officers to apply excessive force without repercussions"

and Briggs having "first[-]hand knowledge of the illegitimate and illicit practices" are

conclusory.  See (Doc. No. 1-1 at 7).  Gorrio's complaint also lacks factual averments linking any

alleged policy with his alleged constitutional violations.  See McTernan v. City of York, PA, 564

F.3d 636, 659 (3d Cir. 2009) (concluding plaintiff failed to plead plausible municipal liability

claim due to lack of adequate factual averments about a "custom or policy, or a link between [the

policy] and a municipal decisionmaker" (citing Pembaur v. City of Cincinnati, 475 U.S. 469, 480

(1986))); see also Garcia v. City of Hazelton, No. 24-cv-00411, 2024 WL 5058768, at *7 n.1

(M.D. Pa. Dec. 10, 2024) (pointing out that plaintiff's conclusory allegations about city having a

policy or custom of, inter alia, using excessive force "cannot fairly be said to represent official

policy, warranting the imposition of municipal liability without factual averments linking the . . .

policy to the[] alleged constitutional violations" (internal quotation marks omitted) (citing

<u>McTernan</u>, 564 F.3d at 659)).  Accordingly, the Court will dismiss Gorrio's Section 1983 claims against Briggs.

### (2)    First Amendment – Freedom of Speech

Defendants contend that Gorrio has failed to state plausible First Amendment free-speech claims against them because (1) he failed to allege his speech was impaired, (2) they have a legitimate interest in maintaining a safe and orderly prison, and (3) Gorrio's frustration with the DCP grievance system does not rise to the level of a First Amendment violation.  (Doc. No. 18 at 11.)  The Court will grant their motion to dismiss Gorrio's free-speech claim.[12]

The Free Speech Clause of the First Amendment, applicable to the states through the Fourteenth Amendment, provides that "Congress shall make no law . . . abridging the freedom of speech."  <u>See</u> U.S. Const. amend. I; <u>United Bhd. of Carpenters & Joiners of Am., Loc. 610, AFL-CIO v. Scott</u>, 463 U.S. 825, 831 (1983) (explaining that First Amendment applies to states "by virtue of the Due Process Clause of the Fourteenth Amendment . . . .").  Concerning prisons, "convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison[,]" and, thus, they "clearly retain protections afforded by the First Amendment[.]"  <u>See</u> <u>O'Lone v. Est. of Shabazz</u>, 482 U.S. 342, 348 (1987) (citations and internal quotation marks and citations omitted).  Nevertheless, prisoners' incarceration necessarily limits "many privileges and rights," which is "justified by the considerations underlying our penal system."  <u>See</u> <u>id.</u> (citation and internal quotation marks omitted).  These limitations "arise both

---

[12]  To the extent the Court provides analysis beyond that supplied by Defendants' supporting brief, the Court notes that these claims would be subject to dismissal under Section 1915(e)(2)(B)(ii) for the failure to state a claim.

from the fact of incarceration and from valid penological objectives—including deterrence of crime, rehabilitation of prisoners, and institutional security." See id. (citations omitted).

"[The] evaluation of penological objectives is committed to the considered judgment of prison administrators, who are actually charged with and trained in the running of the particular institution under examination." Id. at 349 (citations and internal quotation marks omitted). Thus, "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." See Turner v. Safley, 482 U.S. 78, 89 (1987) (alteration omitted). This standard "ensures the ability of corrections officials to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration . . . and[, additionally, it] avoids unnecessary intrusion of the judiciary into problems particularly ill[-]suited to resolution by decree." See O'Lone, 482 U.S. at 349–50 (citations and internal quotation marks omitted).

In this case, Gorrio neither specifies how Defendants violated his First Amendment rights to free speech in his complaint, nor does he elaborate on his free speech claim in his brief in opposition to Defendants' motion to dismiss. Nevertheless, it is conceivable that Gorrio attempts to raise a free-speech claim relating to the alleged duplication of his mail. If so, he has not raised a plausible claim.[13]

Regarding Gorrio's allegations about the improper duplication of his mail, the Court recognizes that inmates

> have a First Amendment free-speech right in confidentiality with regard to attorney-
> client communication and court mail. . . . There does not need to be an independent

---

[13]  To the extent that Gorrio's free-speech claim relates to DCP's grievance process, the Court has construed this claim as a Fourteenth Amendment due-process claim. Additionally, it is possible that Gorrio complains about the loss of his legal materials, which could be his attempt to assert a First Amendment access-to-the-courts claim. The Court discusses both potential claims later in this Memorandum.

> injury to assert such a First Amendment claim, as "protection of an inmate's
> freedom to engage in protected communications is a constitutional end in itself."

See Mbewe v. Delbalso, No. 21-cv-00654, 2023 WL 3513675, at *5 (M.D. Pa. May 17, 2023)

(footnotes omitted) (quoting Jones v. Brown, 461 F.3d 353, 358–60 (3d Cir. 2006)),

reconsideration denied, 2023 WL 4372695 (M.D. Pa. July 6, 2023), aff'd, 2024 WL 510500 (3d

Cir. Feb. 9, 2024) (unpublished).  Gorrio, however, does not allege that DCP officials unlawfully

duplicated court mail or mail from his attorney.  To the extent that Gorrio complains about

receiving copies of his non-legal mail via his tablet while DCP keeps the original copies, such an

allegation does not constitute a First Amendment violation.  See, e.g., Woodell v. Wetzel, No. 20-

3235, 2022 WL 17424287, at *2 (3d Cir. Dec. 6, 2022) (unpublished) (concluding that

defendants were entitled to qualified immunity from plaintiff's First Amendment challenge to the

Commonwealth of Pennsylvania Department of Corrections' policy to "use vendors, such as

SMART Communications, to scan non-privileged mail, send the digital files to the prison, and

destroy the originals"); Swindler v. Hanlin, No. 24-cv-00590, 2024 WL 4555382, at *2 (D. Or.

Oct. 23, 2024) ("Plaintiff cites no case holding that the practice of scanning and digitally storing

[inmates'] incoming mail violates the First Amendment and several courts have found to the

contrary." (citations omitted)); Williams v. Redman, No. 20-cv-00196, 2021 WL 1907224, at *2

(N.D. Ind. May 12, 2021) ("The First Amendment protects communication, not pieces of paper."

(citation omitted)).  Accordingly, the Court will grant Defendants' motion to dismiss Gorrio's

First Amendment free-speech claim.

### (3)    First Amendment Retaliation

Gorrio purports to assert a claim for unlawful "retaliation for speech" in violation of the

Eighth Amendment, see (Doc. No. 1-1 at 8), which the Court has construed as a First

Amendment retaliation claim because there is no Eighth Amendment claim for unlawful

retaliation to speech.  Defendants, who correctly recognized that Gorrio's claim falls under the First Amendment, move to dismiss the claim.  See (Doc. No. 18 at 20).  Defendants argue only that the legitimacy of their actions thwarts any retaliation claim.  See (id.).  The Court will deny this part of Defendants' motion to dismiss on this basis, finding that Gorrio has stated a plausible First Amendment retaliation claim.

To state a plausible First Amendment retaliation claim, a plaintiff must allege that: "(1) [their] conduct was constitutionally protected; (2) [they] suffered an adverse action at the hands of prison officials; and (3) [their] constitutionally protected conduct was a substantial or motivating factor in the decision to discipline [them]."  See Watson v. Rozum, 834 F.3d 417, 422 (3d Cir. 2016) (citations omitted).  As for the first element of a plaintiff's prima facie case, the filing of lawsuits and prison grievances constitute activity protected by the First Amendment. See id. (reiterating prior holding that a prisoner-plaintiff engages in constitutionally protected activity when they file a grievance against a prison official (citing Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003))); Smith v. Mensinger, 293 F.3d 641, 653 (3d Cir. 2002) (acknowledging its prior holding "that falsifying misconduct reports in retaliation for an inmate's resort to legal process is a violation of the First Amendment's guarantee of free access to the courts" (citation omitted)); Allah v. Seiverling, 229 F.3d 220, 223–25 (3d Cir. 2000) (concluding that the prisoner-plaintiff stated a First Amendment retaliation claim where he alleged that he had been kept in administrative segregation in retaliation for filing civil rights claims against prison officials).

Regarding the second element of a plaintiff's prima facie case, an adverse action is one that is "sufficient to deter a person of ordinary firmness from exercising [their] [constitutional] rights[.]"  See Mitchell, 318 F.3d at 530 (second alteration in original) (citations and internal quotation marks omitted); Fantone v. Latini, 780 F.3d 184, 191 (3d Cir. 2015), as amended (Mar.

24, 2015) (explaining that an adverse action must be "sufficient to deter a person of ordinary firmness from exercising [their] constitutional rights . . ." (citation omitted)).  However, to be actionable under Section 1983, the alleged adverse action must be more than de minimis.  See McKee v. Hart, 436 F.3d 165, 170 (3d Cir. 2006) (explaining that the alleged retaliatory conduct "need not be great in order to be actionable, but it must be more than de minimis" (citations and internal quotation marks omitted)).

And, finally, with respect to the third element of a plaintiff's prima facie case, the Court observes that, "[b]ecause motivation is almost never subject to proof by direct evidence," a plaintiff must typically "rely on circumstantial evidence to prove a retaliatory motive."  See Watson, 834 F.3d at 422.  The plaintiff "can satisfy [their] burden with evidence of either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing that suggests a causal link." See id. (footnote omitted).

While the nature of his allegation is somewhat unclear, the Court understands Gorrio to allege that the search and seizure, confiscation of his legal materials, and use of excessive force on September 27, 2021, occurred in retaliation for him filing a legal action.  As Gorrio points out in his brief in opposition to the motion to dismiss, he alleges that Edwin threatened to throw away his legal paperwork so that he could no longer sue "the doc."  See (Doc. No. 21 at 2); see also (Doc. No. 1-1 at 3–4).  This allegation would satisfy the first element of Gorrio's retaliation claim because the filing of a legal action constitutes protected activity.  See Allah, 229 F.3d at 223–25 (recognizing that prisoner filing civil rights claims against prison officials constituted protected activity under the First Amendment).  Gorrio also alleges that he was retaliated against by having his cell searched, having his legal paperwork confiscated, and being subjected to the

38

use of excessive force.  See (Doc. No. 1-1 at 3–5).  These allegations would satisfy the second element of a First Amendment retaliation claim because those actions constitute adverse actions. See Bohannon v. Trevethan, No. 23-cv-01312, 2024 WL 5203032, at *10 (M.D. Pa. Dec. 23, 2024) (finding that "the cell search and confiscation of personal property allegations [were] sufficient to satisfy the adverse action prong of the prima facie retaliation claim"); Caldwell v. Luzerne County Corr. Fac. Mgmt. Emps., 732 F. Supp. 2d 458, 473 (M.D. Pa. 2010) (concluding that "subjecting [the plaintiff] to excessive force" because "he was filing a lawsuit against [the defendants]" would "clearly . . . be considered adverse").

Concerning the third element of a prima facie retaliation claim—causal connection—a plaintiff's pleading burden relating to this element is "very low at the pleading stage."  See Edwards v. Houser, No. 23-cv-01287, 2024 WL 3362276, at *5 (M.D. Pa. July 9, 2024) (citations omitted).  Gorrio's allegations in his complaint satisfy this low burden insofar as he alleges that Defendants retaliated against him.  See Mitchell, 318 F.3d at 530 (explaining that "the word 'retaliation' in [the plaintiff's] complaint sufficiently implies a causal link between his complaints and the misconduct charges filed against him"); Bendy v. Ocean County Jail, 341 F. App'x 799, 802 (3d Cir. 2009) (unpublished) ("To state a claim for retaliatory treatment, a complaint need only allege a chronology of events from which retaliation may be inferred." (internal quotation marks and citation omitted)).  Accordingly, the Court will deny Defendant's motion to dismiss Gorrio's First Amendment retaliation claim.

### (4)    Fifth Amendment Due Process Violation

Gorrio alleges that Defendants violated his due process rights under the Fifth Amendment.  (Doc. No. 1-1 at 8.)  Defendants move to dismiss this claim because they are

county officials and the Fifth Amendment applies only to federal actors.  (Doc. No. 18 at 18.)
The Court agrees.

The Fifth Amendment is inapplicable here because Gorrio does not allege (and could not
plausibly allege) that any Defendant is a federal official.  See Santos v. Sec'y of D.H.S., 532 F.
App'x 29, 33 (3d Cir. 2013) (unpublished) ("[T]he Fifth Amendment applies to actions of the
federal government, not state actions[.]" (citing Citizens for Health v. Leavitt, 428 F.3d 167, 178
n.11 (3d Cir. 2005))); Bergdoll v. City of York, 515 F. App'x 165, 170 (3d Cir. 2013)
(unpublished) (dismissing plaintiff's Fifth Amendment claim against city and county officials
because plaintiff did not allege wrongdoing by any federal actors).  Therefore, the Court will
grant this part of Defendants' motion and will dismiss Gorrio's Fifth Amendment due-process-
violation claim.

### (5)    Fourteenth Amendment Due Process Violation

In moving to dismiss Gorrio's Fourteenth Amendment due-process claims, Defendants
appear to argue that (1) Gorrio's challenge to his criminal conviction is barred by Heck v.
Humphrey, 512 U.S. 477 (1994), and (2) the procedures employed at DCP satisfied due process.
See (Doc. No. 18 at 18–19).  Neither of these arguments support dismissal of any possible due
process claim.  In the first instance, it is very much unclear which allegations in the complaint
Defendants rely upon in contending that Gorrio improperly attempts to challenge his criminal
conviction because the Court has not located any such allegations in the complaint.[14]  As for the

---

[14]  In Heck, the United States Supreme Court held that "harm caused by actions whose
unlawfulness would render a conviction or sentence invalid" is not cognizable under Section
1983, unless the conviction or sentence was "reversed on direct appeal, expunged by executive
order, declared invalid by a state tribunal authorized to make such a determination, or called into
question by a federal court's issuance of a writ of habeas corpus."  See 512 U.S. at 486–87.  The
Supreme Court has extended Heck to prison disciplinary proceedings resulting in the loss of
good time credits.  See Edwards v. Balisok, 520 U.S. 641, 643, 648 (1997).

sufficiency of the process provided at DCP, Defendants do not identify the allegations in the complaint showing that Gorrio received due process. They also do not differentiate between any process Gorrio may have received relating to the conditions of his confinement and his filing of grievances. Overall, Defendants' arguments do not show that Gorrio has failed to state a plausible Fourteenth Amendment due process claim.

Nevertheless, the Court has screened Gorrio's possible Fourteenth Amendment claims pursuant to Section 1915(e)(2)(B), and it appears that Gorrio asserts four (4) due process claims. First, Gorrio alleges that the DCP's grievance system violates due process. See (id. at 7–8). Second, Gorrio alleges that his right of access to the courts was denied when his legal paperwork was seized while he was away from his cell on September 27, 2021. See (id. at 5). Third, Gorrio alleges that his due process rights were violated when he spent forty-one (41) days in prehearing confinement in the RHU while awaiting a hearing on the written misconduct he received for fighting. See (id. at 5–6). Fourth, Gorrio alleges that his due process rights were violated when Defendants destroyed his legal paperwork. See (id. at 5). None of these allegations support a plausible Fourteenth Amendment due process claim at this time.

The Fourteenth Amendment of the United States Constitution provides in pertinent part that: "No State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Cons. amend. XIV, § 1. To allege a plausible Section 1983 claim for the deprivation

---

Since Gorrio's complaint lacks any reference to his underlying criminal charges, it is possible that Defendants attempted to argue that Heck bars Gorrio from challenging the results of his prison disciplinary proceedings. If that was their argument, it is meritless because Heck bars only challenges to the results of prison disciplinary proceedings affecting the fact or duration of a prisoner's confinement. See Leamer v. Fauver, 288 F.3d 532, 542–43 (3d Cir. 2002). There is no indication from the complaint that Gorrio's disciplinary proceedings affected the overall length of his confinement; instead, it appears that they affected the conditions of his confinement insofar as he was placed in the RHU.

of procedural due process rights, "a plaintiff must allege that (1) [they were] deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to [them] did not provide 'due process of law.'"  See Hill v. Borough of Kutztown, 455 F.3d 225, 233–34 (3d Cir. 2006) (quoting Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000)); see also Ingraham v. Wright, 430 U.S. 651, 672 (1977) (directing that the reviewing court first determine "whether the asserted individual interests are encompassed within the . . . protection of 'life, liberty or property," and, if a protected interest is implicated, the court must "decide what procedures constitute 'due process of law'")  If no protected interest is implicated by the plaintiff's allegations, then "it is unnecessary to analyze what procedures were followed when an alleged deprivation of an interest occurred."  See Harris v. Hines, No. 16-cv-00040, 2017 WL 4119743, at *5 (M.D. Pa. Sept. 18, 2017).

Concerning the first of Gorrio's possible Fourteenth Amendment due process claims—his issues with the DCP's grievance process—he fails to state a plausible claim.  Prisoners have a constitutional right to seek redress of grievances as part of their First and Fourteenth Amendment rights of access to courts.  See Monroe v. Beard, 536 F.3d 198, 205 (3d Cir. 2008) ("Under the First and Fourteenth Amendments, prisoners retain a right of access to the courts."); Jutrowski v. Twp. of Riverdale, 904 F.3d 280, 294 n.17 (3d Cir. 2018) (explaining that, typically, in the prisoner context, the right is "framed as a due process right" (citations omitted)).  However, "this right is not compromised by [prison officials' failure] to address these grievances."  See Booth v. King, 346 F. Supp. 2d 751, 761 (E.D. Pa. 2004); see also Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991) (per curiam) ("When the claim underlying the administrative grievance involves a constitutional right, the prisoner's right to petition the government for redress is the right of

access to the courts, which is not compromised by the prison's refusal to entertain [their] grievance."). "Access to prison grievance procedures is not a constitutionally[]mandated right, and allegations of improprieties in the handling of grievances do not state a cognizable claim under [Section] 1983." Glenn v. DelBalso, 599 F. App'x 457, 459 (3d Cir. 2015) (unpublished); see Burnside v. Moser, 138 F. App'x 414, 416 (3d Cir. 2005) (unpublished) (affirming that "[i]nmates do not have a constitutionally protected right to the prison grievance process"). In addition, the existence of a grievance procedure "does not confer any substantive constitutional right upon prison inmates." See Hoover v. Watson, 886 F. Supp. 410, 418–19 (D. Del.) (quoting Brown v. Dodson, 863 F. Supp. 284, 285 (W.D. Va. 1994)), aff'd, 74 F.3d 1226 (3d Cir. 1995). Moreover, "[t]he failure of a prison official to provide a favorable response to an inmate grievance is not a federal constitutional violation." See Okey v. Strebig, 531 F. App'x 212, 215 (3d Cir. 2013) (unpublished) (citing Flanagan v. Shively, 783 F. Supp. 922, 931–32 (M.D. Pa.), aff'd, 980 F.2d 722 (3d Cir. 1992)). Therefore, Gorrio cannot maintain constitutional claims based on, inter alia, the alleged inadequacy of the DCP's grievance process in general, the denial of his grievances, the lack of responses to grievances or appeals from grievances. or how his grievances were handled.

As for the second of Gorrio's possible Fourteenth Amendment due process claims, he alleges that various legal documents were seized and destroyed in his absence on September 27, 2021, which "imped[ed] the submission of documents to the court and adherence to deadlines." See (Doc. No. 1-1 at 5). Through this allegation, Gorrio appears to be asserting a denial of his right of access to the courts.

Access-to-court claims generally fall into two (2) categories: forward-looking claims and backward-looking claims. See Christopher v. Harbury, 536 U.S. 403, 413–14 (2002). Forward-

looking claims seek relief from "systemic official action" that "frustrates a plaintiff . . . in preparing and filing suits at the present time." See id. at 413.  As such, in these cases, the underlying cause of action "has not been lost for all time, . . . but only in the short term."  See id. The ultimate object of these claims is to place the plaintiff in a position to pursue the underlying cause of action "once the frustrating condition has been removed."  See id.

On the other hand, backward-looking claims seek relief for suits "that cannot now be tried (or tried with all material evidence), no matter what official action may be in the future." See id. at 413–14 (footnote omitted).  As a result, "[t]hese cases do not look forward to a class of future litigation, but backward to a time when specific litigation ended poorly, or could not have commenced, or could have produced a remedy subsequently unobtainable."  See id. at 414 (footnote and internal footnote omitted).  The ultimate object of these claims is not a judgment in a separate suit, "but simply the judgment in the access claim itself[.]"  See id.

In both types of access claims, the justification is the same: "to provide some effective vindication for a separate and distinct right to seek judicial relief for some wrong."  See id. at 414–15.  The Supreme Court's "cases rest on the recognition that the right is ancillary to the underlying [cause of action], without which a plaintiff cannot have suffered injury by being shut out of court."  See id. at 415.  Thus, in pursuing an access-to-courts claim, a plaintiff must point to an actual injury by "identify[ing] a nonfrivolous, arguable underlying [cause of action]" that is lost or that is being obstructed by the asserted denial of access to the courts.  See id. (internal citation and quotation marks omitted); see also Monroe, 536 F.3d at 206 n.9 (explaining that the prisoner-plaintiff must explain how their claims "may no longer be pursued as a result of defendant's actions").  Also, "the underlying cause of action . . . is an element that must be described in the complaint."  See Christopher, 536 U.S. at 415.

Additionally, in the prison context, "the injury requirement is not satisfied by just any type of frustrated legal claim." See Lewis v. Casey, 518 U.S. 343, 354 (1996). Instead, only claims that involve "direct or collateral attacks on a prisoner's conviction or sentence, or civil rights suits challenging the conditions of [their] confinement—could support an access-to-courts injury." See Rivera v. Monko, 37 F.4th 909, 921 (3d Cir. 2022) (citing Lewis, 518 U.S. at 355). This limitation on the type of potential claims exists because "[i]mpairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." See Lewis, 518 U.S. at 355.

In this case, Gorrio does not provide sufficient information in the complaint to allege a plausible access-to-courts claim. He does not identify a Defendant who allegedly destroyed his documents; therefore, he has not pleaded the personal involvement of any Defendant in any constitutional violation. See Rode, 845 F.2d at 1207 ("A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . ."). Additionally, there are no allegations describing the underlying cause of action that was hindered by the loss of exhibits, a criminal complaint, "writ of habeas corpus documentation," and motions. See (Doc. No. 1-1 at 5). Gorrio also does not show that he suffered an actual injury because he does not describe how Defendants' actions impeded or caused him to lose his chance to pursue a nonfrivolous or arguable underlying claim. His conclusory allegations about his submission of documents being impeded or that unidentified deadlines were affected are insufficient. Accordingly, the Court will dismiss Gorrio's access-to-courts claim.

Regarding the third of Gorrio's possible due process claims, he alleges that his due process rights were violated when he spent forty-one (41) days in prehearing confinement in the RHU while he awaited his disciplinary hearing on his written misconduct for fighting. See (Doc.

45

No. 1-1 at 5–6).[15]  This could be a cognizable procedural due process claim.  However, Gorrio's allegations preclude any analysis as to whether he has stated a plausible claim.  In this regard, although Gorrio identifies himself as a convicted and sentenced state prisoner in his complaint, see (Doc. No. 1 at 2), it appears that he could have been a pretrial detainee at DCP at the time of the events described in his complaint.  See Commonwealth v. Gorrio, No. 807 MDA 2022, 2023 WL 8111852, at *1 (Pa. Super. Ct. Nov. 22, 2023) (unpublished) (stating that a criminal complaint was filed against Gorrio on August 17, 2021, and after a jury trial in May 2022, Gorrio was found guilty and later sentenced to state prison).  Gorrio's incarceration status during the events alleged in his complaint is significant because a pretrial detainee's due process protections can differ from those of a convicted and sentenced prisoner.  See, e.g., Stevenson v. Carroll, 495 F.3d 62, 69 (3d Cir. 2007) ("[T]he protections due to sentenced inmates provide a floor for what pretrial detainees may expect.").  Because Gorrio identifies himself as a convicted and sentenced state prisoner in his complaint, and the Court is unaware of the circumstances upon which he was incarcerated at DCP during the events described in the complaint, the Court is unable to apply the appropriate standard to determine the plausibility of this claim.[16]  Accordingly, the Court will

---

[15]  "Prison disciplinary proceedings may . . . constitute a denial of due process in the context of a civil rights action under § 1983 when they are instituted for the sole purpose of retaliating against an inmate for his/her exercise of a constitutional right."  Smith, 293 F.3d at 653.  "Even if the discipline is initiated in retaliation for a protected act, however, due process is satisfied where the plaintiff has an opportunity to confront and challenge the retaliatory misconduct reports." Cooper v. Pa. Dep't of Corr., 756 F. App'x 130, 135 (3d Cir. 2018) (unpublished) (citing Smith, 293 F.3d at 653).  Although Gorrio complains about his disciplinary proceedings and makes general claims of retaliation, the Court has not construed his complaint as containing a due process claim that disciplinary proceedings were initiated against him due to his exercise of a constitutional right.  In this regard, Gorrio does not allege that he engaged in any protected activity prior to the issuance of the September 7, 2021 written misconduct for fighting.

[16]  This applies equally to the extent that Gorrio attempts to assert a substantive due process claim.  See Stevenson, 495 F.3d at 67–69 (reciting law applicable to pretrial detainees'

dismiss Gorrio's due process claim based on his alleged forty-one (41) day stay in the RHU prior to receiving a disciplinary hearing.

Gorrio's final possible Fourteenth Amendment due process claim relates to the alleged intentional destruction of his legal paperwork, with said claim pertaining purely to the loss of the paperwork and not to how such loss impacted his access to the courts. Such a claim is also not cognizable under Section 1983.[17]

The intentional deprivation of property by government officials does not give rise to a cognizable due process claim if the plaintiff has an adequate post-deprivation remedy available under state law. See Hudson v. Palmer, 468 U.S. 517, 533 (1984) (providing that "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available"); Allen, 589 U.S. at 261 (explaining that a deprivation of property "must be intentional, or at least reckless, to come within the reach of the Due Process Clause[,]" and that "[a] State cannot violate that Clause unless it fails to offer an adequate remedy for [a deprivation], because such a remedy itself

---

substantive due process claim based on their extended placement in a security housing unit without receiving a hearing or explanation for their transfers into that unit).

[17] Although Gorrio asserts several negligence-related causes of action in his complaint, there is no reasonable inference from his allegations that he is claiming that Defendants negligently destroyed his legal paperwork. Even if he did, the negligent deprivation of property by a state official does not give rise to a cognizable due process claim. See Daniels v. Williams, 474 U.S. 327, 328 (1986) (providing that the negligent acts of state officials causing unintentional loss of or injury to life, liberty, or property do not violate the Due Process Clause of the Fourteenth Amendment); Allen v. Cooper, 589 U.S. 248, 261 (2020) (stating that "a merely negligent act does not 'deprive' a person of property" within the meaning of the Due Process Clause (citing Daniels, 474 U.S. at 328)); Johnson v. City of Phila., 975 F.3d 394, 402 (3d Cir. 2020) (stating that "'the Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property'" (quoting Daniels, 474 U.S. at 328) (emphasis in original)).

satisfies the demand of 'due process'" (citation and internal citation omitted)).  Pennsylvania law

provides an adequate remedy for local prison officials' unlawful deprivation of inmate property.

See 42 Pa. C.S. § 8542(b)(2) (waiving immunity for negligent acts related to the "care, custody

or control of property of others in the possession or control of the local agency"); Shakur v.

Coelho, 421 F. App'x 132, 135 (3d Cir. 2011) (unpublished) (noting that the PSTCA provides an

adequate remedy for willful destruction of property); Scott v. Kauffman, No. 19-cv-00695, 2022

WL 3084302, at *8 (M.D. Pa. Aug. 3, 2022) (pointing out that "Pennsylvania provides a suitable

post-deprivation remedy in the form of the [PSTCA], which allows for damages for the loss of

personal property in the possession or control of a local agency").  Therefore, Gorrio's

Fourteenth Amendment procedural due process claim regarding the loss of his property is subject

to dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) because he cannot state a cognizable due

process claim.

### (6)    Fourth Amendment Unlawful Search and Seizure

Defendants move to dismiss Gorrio's Fourth Amendment unlawful-search-and-seizure

claim because the Fourth Amendment does not apply to cell searches.  Defendants are correct.

See Hudson, 468 U.S. at 530 ("[W]e conclude that prisoners have no legitimate expectation of

privacy and that the Fourth Amendment's prohibition on unreasonable searches does not apply in

prison cells."); see also Block v. Rutherford, 468 U.S. 576, 590–91 (1984) (concluding that

prison officials' search of pretrial detainee's cell by prison officials does not violate the Fourth

Amendment or offend principles of due process).  The Court will grant Defendants' motion to

dismiss this claim.

(7)    **Eighth Amendment Retaliation Against a Victim**

Defendants move for dismissal of Gorrio's Eighth Amendment "retaliation against a victim" claim because no such cause of action exists.  (Doc. No. 18 at 20.)  The Court agrees with Defendants that there does not appear to be a standalone Section 1983 claim for Eighth Amendment retaliation.  See, e.g., Nieto v. Godinez, No. 16-cv-00761, 2016 WL 4540894, at *3 (S.D. Ill. Aug. 31, 2016) ("As to the Eighth Amendment, there is no cause of action for Eighth Amendment retaliation per se, although an inmate may bring claims based, for example, on excessive force or unconstitutional conditions of confinement, among other claims.").  To the extent that there is such a claim, its elements would seemingly mirror those of a First Amendment retaliation claim, which the Court has addressed above.  See Brooks v. DiGuglielmo, No. 05-cv-04588, 2008 WL 5187529, at *14 (E.D. Pa. Dec. 9, 2008) ("Claims for retaliation under the Eighth Amendment must survive the same test as those under the First Amendment.").  However, due to Gorrio's pro se status, the Court construes this cause of action as Gorrio's attempt to assert an excessive force claim against Briggs, Edwin, Strawbridge, and Myers, based on the events of September 27, 2021.[18]

So construed, the Court cannot analyze whether Gorrio has stated a plausible claim in his complaint because of the uncertainty about whether he was a pretrial detainee or a convicted and sentenced prisoner when any alleged excessive force was used against him.  The applicable test for excessive force claims by pretrial detainees and convicted and sentenced prisoners is significantly different.  See Giddings v. Rogers, No. 22-cv-00097, 2024 WL 4186926, at *10–11 (M.D. Pa. Sept. 13, 2024) (describing differences in excessive force claims by pretrial detainees

---

[18]  Gorrio does not mention Jones in this cause of action.  See (Doc. No. 1-1 at 8).

and prisoners who have been convicted of a crime).  Without sufficient factual allegations about

Gorrio's incarceration status at the time of the events alleged in his complaint, the Court cannot

assess whether he has stated a plausible excessive force claim against any Defendant.

Accordingly, the Court will dismiss Gorrio's Eighth Amendment excessive force claim under

Section 1915(e)(2)(B)(ii).

### (8)    Eighth Amendment Sexual Harassment and Sexual Abuse

Gorrio asserts Eighth Amendment claims for sexual harassment and sexual abuse in his

complaint.  The Court will dismiss these claims (whether asserted under the Eighth or Fourteenth

Amendments) for the failure to state a claim under Section 1915(e)(2)(B)(ii).[19]

Regarding a prisoner's claims of sexual abuse and harassment:

> Sexual abuse and harassment can violate an inmate's constitutional rights.  Ricks v. Shover, 891 F.3d 468, 473 (3d Cir. 2018) ("[P]rison sexual abuse can violate the Constitution"); Alberti v. Klevenhagen, 790 F.2d 1220, 1224 (5th Cir. 1986) ("The same conditions of violence and sexual abuse which constitute cruel and unusual punishment may also render the confinement of pretrial detainees punishment per se."); Chin v. Warfel, No. 23-4220, 2024 WL 665536, at *4 (E.D. Pa. Feb. 15, 2024) ("Because it appears from the complaint that Mr. Chin is a pretrial detainee, the Court analyzes his conditions of confinement claim under the Fourteenth Amendment.").  Claims for sexual abuse and harassment are evaluated similarly to excessive force claims in that the prisoner must allege facts plausibly establishing both objective and subjective components.  Ricks, 891 F.3d at 475 (stating that the misconduct "must be objectively, sufficiently intolerable and cruel, capable of causing harm, and the official must have a culpable state of mind"); Chin, 2024 WL 665536, at *4.  Regarding the subjective component, the Court "consider[s] whether the official had a legitimate penological purpose or if he or she acted 'maliciously and sadistically for the very purpose of causing harm.[']" Ricks[,] 891 F.3d at 475 (quoting Whitley v. Albers, 475 U.S. 312, 320-21 (1986)).  Regarding the objective prong, the Court considers whether the action is "repugnant to the conscience of mankind" or whether it is "sufficiently serious or severe." Id. at 475-76 (citations omitted).  However, "not . . . every malevolent touch by a prison guard

---

[19]  Defendants move to dismiss these claims.  (Doc. No. 18 at 20–21.)  However, because they did not develop their arguments in support of dismissal beyond asserting conclusory statements in their brief, see (id.), the Court reviews the claims under Section 1915(e)(2)(B) instead.

gives rise to a federal cause of action."  Id. at 475 (quoting Hudson v. McMillian, 503 U.S. 1, 9 (1992)).

A claim for sexual abuse or harassment requires a showing of physical contact with the alleged perpetrator.  Ricks, 891 F.3d at 471 ("Our society requires prisoners to give up their liberty, but that surrender does not encompass the basic right to be free from severe unwanted sexual contact.") (emphasis added); Williams v. Wetzel, 776 F. App'x 49, 53 (3d Cir. 2019) (affirming dismissal of Eight[h] Amendment sexual conduct claim because the allegations did not involve any sexual contact between the prisoner and the corrections officer); Chin, 2024 WL 665536, at *4 ("Mr. Chin alleges only that Sgt. Fischer made an inappropriate gesture and verbal comments. Because he does not allege any sexual contact by Sgt. Fischer, his claim based on sexual abuse is not plausible and will be dismissed with prejudice."); McCain v. Wetzel, No. 17-194, 2018 WL 1211507, at *3 (W.D. Pa. Mar. 8, 2018) (stating that "sexual harassment in the absence of contact or touching does not establish an Eighth Amendment violation").  "Verbal harassment, including lewd comments, sexual propositioning, and the like, is not sufficient to satisfy the objective element of an Eighth Amendment sexual harassment claim."  McCain, 2018 WL 1211507, at *3 (citing Manon v. Garrison, 2012 WL 3542328 (M.D. Pa. Aug. 15, 2012)); Chin, 2024 WL 665536, at *4 (applying the same standard to case brought by pretrial detainee).

Plaza v. Lancaster County Comm'rs, No. 24-cv-05943, 2025 WL 408682, at *4–5 (E.D. Pa. Feb. 5, 2025) (most alterations in original).

In this case, Gorrio's claims for sexual harassment and sexual abuse arise out of (1) Edwin's comments during the cell search on September 27, 2021, (2) the comments of an unidentified correctional officer to Gorrio as he was escorted from his cell to be searched for contraband on his person, (3) being forced to strip naked while the officers searched for contraband on him, (4) officers "grab[bing] Gorrio's a**" while they were punching and striking him on the ground, and (5) Jones's comments to Gorrio on November 20, 2021.  See (Doc. No. 1-1 at 5–6).  Even though the Court is unaware of Gorrio's precise incarceration status at this time, none of these allegations support a plausible Section 1983 claim based on sexual harassment or sexual abuse under either the Eighth or Fourteenth Amendments.  See Chin, 2024 WL 665536, at *4 ("A sexual abuse claim is evaluated similarly to an excessive force claim in

that the prisoner must allege facts that plausibly show that the actions of the defendant were objectively unreasonable . . . ." (citing <u>Clark v. Doe-Walker</u>, No. 19-cv-02235, 2020 WL 564756, at *3 (E.D. Pa. Feb. 5, 2020))).

The Court starts with Gorrio's allegations against Jones pertaining to Jones's comments to him on November 20, 2021.  Because Gorrio does not allege that Jones's comments were accompanied by sexual contact, Gorrio has failed to state a plausible claim for a constitutional violation against Jones.  <u>See</u> <u>id.</u> ("Verbal taunting and comments alone, even of a sexual nature, do not rise to the level of a constitutional violation . . . ."); <u>Brown v. Hamilton Police Dep't</u>, No. 13-cv-00260, 2013 WL 3189040, at *2 (D.N.J. June 21, 2013) ("Allegations of verbal abuse or threats, unaccompanied by injury or damage, are not cognizable under § 1983, regardless of whether the inmate is a pretrial detainee or sentenced prisoner."), <u>aff'd sub nom.</u> <u>Brown v. Hamilton Twp. Police Dep't Mercer County, N.J.</u>, 547 F. App'x 96 (3d Cir. 2013) (unpublished).

Concerning any possible claim relating to his September 27, 2021 strip search for contraband, Gorrio has failed to allege a plausible claim for a constitutional violation.  <u>See</u> <u>McDowell v. Deparlos</u>, No. 15-cv-00487, 2017 WL 1158093, at *10 (M.D. Pa. Feb. 2, 2017) ("[A] visual strip search of a pretrial detainee, even if without reasonable suspicion that a particular inmate sought to conceal contraband, does not violate the Fourteenth Amendment." (citing <u>Florence v. Bd. of Chosen Freeholders</u>, 566 U.S. 318 (2012) and <u>Langella v. County of McKean</u>, No. 09-cv-00311, 2010 WL 3824222, at *11–12 (W.D. Pa. Sept. 23, 2010))), <u>report and recommendation adopted</u>, 2017 WL 1134407 (M.D. Pa. Mar. 27, 2017).  Prisoners such as Gorrio do not have

> a Fourth or Fourteenth Amendment right to be free of strip searches conducted by prison officials without probable cause as long as the search is conducted in a reasonable manner.  In <u>Bell v. Wolfish</u>, the Supreme Court held the reasonableness of a search under the Fourth Amendment requires "a balancing of the need for the

particular search against the invasion of personal rights that the search entails" and we are directed by the Supreme Court to "consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." "[I]t is constitutional to conduct a full strip search of an individual detained in a jail, regardless of the reason for detention or the existence of reasonable suspicion that the individual is concealing something." Following <u>Bell</u>, the Supreme Court thirty-three years later in <u>Florence v. Board of Chosen Freeholders</u> held a Facility policy requiring pretrial detainees to expose their body cavities for visual inspection as part of a strip search does not violate the Fourth Amendment. The Court reasoned those arrested for minor offenses may be among the detainees processed at detention facilities including a strip search on intake to uncover contraband which may go undetected by a pat down, metal detector, or other less invasive searches.

<u>See</u> <u>Wilson-Walker v. Gambone</u>, No. 24-cv-04828, 2025 WL 242835, at *6 (E.D. Pa. Jan. 17, 2025) (internal footnotes omitted).

Here, Gorrio does not allege any facts supporting an inference that his strip search for contraband on September 27, 2021 was unreasonable. Gorrio alleges that he complied with the directive to remove his clothes, and he was searched while being recorded on a correctional officer's body camera. <u>See</u> (Doc. No. 1-1 at 4). Also, while ultimately irrelevant, Gorrio acknowledges possessing contraband at the time of the strip search. <u>See</u> (<u>id.</u>). Overall, there are no allegations remotely suggesting that the strip search was unreasonably conducted. <u>See</u> <u>Wilson-Walker</u>, 2025 WL 242835, at *6 (concluding that plaintiff's allegations that a correctional officer "instructed him to lift his genitals and buttocks, jump up and down, turn around, squat, and cough" did not violate the Fourth or Fourteenth Amendments). Therefore, the Court will dismiss this claim.

As for the other conduct alleged to have occurred on September 27, 2021, Gorrio's allegations about Edwin's comments to him during the cell search or the other correctional officer's statements while Gorrio was being escorted to be strip-searched, fail for the same reason as his claim pertaining to Jones's alleged conduct on November 20, 2021, namely, he does

not allege that any sexual physical contact occurred along with these statements. To the extent

that these statements could somehow be linked to Gorrio's allegations relating to when Edwin

took him to the ground, Gorrio has still failed to allege a plausible claim. Simply put, his

allegation that he was somehow sexually abused because a correctional officer "grab[bed] his

a**" is insufficient because this act does not constitute sexual abuse. Putting aside the fact that

Gorrio's allegation strains credulity insofar as he alleges that while being punched and struck by

several officers, one correctional officer decided to grab his buttocks for purposes of that

officer's sexual gratification or to otherwise degrade, humiliate, or demean Gorrio, it was a

"minor, isolated incident" that does not "rise to the level" of a constitutional violation. See

Hampton v. Defendant One, No. 17-cv-00147, 2018 WL 1545591, at *3 (W.D. Ky. Mar. 29,

2018) (citing cases); see also Voorhis v. Lindsey, No. 23-cv-00093, 2024 WL 3862751, at *6

(W.D. Pa. July 29, 2024) (determining that prisoner-plaintiff's allegations of sexual harassment

and sexual abuse were implausible insofar as, inter alia, plaintiff neither alleged "contact that

could conceivably be described as 'sexual[,' n]or was the limited incident described in his

complaint so 'severe or serious' as to be 'repugnant to the conscience of mankind.'" (quoting

Ricks, 891 F.3d at 474)), report and recommendation adopted, 2024 WL 3861408 (W.D. Pa. Aug.

19, 2024). Accordingly, the Court will also dismiss Gorrio's sexual harassment and sexual

assault claims relating to the comments and alleged contact with his buttocks that occurred on

September 27, 2021, pursuant to Section 1915(e)(2)(B)(ii).

### (9)    Eighth Amendment Failure to Intervene

Defendants contend that Gorrio has failed to state a plausible Section 1983 claim for

failure to intervene because there was no duty to intervene insofar as they lawfully restrained

him and, even if there was a violation, Gorrio's "own averments indicate no reasonable

54

opportunity to intervene for Officer Myers in the alleged blow from Officer Edwin as described." See (Doc. No. 18 at 21).  The Court disagrees with Defendants that Gorrio has failed to state a cognizable failure-to-intervene claim.

Whether raised by a pretrial detainee under the Fourteenth Amendment or a convicted prisoner under the Eighth Amendment, "a corrections officer's failure to intervene in a beating can be the basis of liability . . . under § 1983 if the corrections officer 'had a reasonable opportunity to intervene and simply refused to do so[.]'"  See Torres v. Monmouth County Corr. Inst., No. 19-cv-17704, 2021 WL 3773687, at *4 n.5 (D.N.J. Aug. 25, 2021) (quoting Smith, 293 F.3d at 650); see also Gonda v. Recarte, No. 17-cv-00292, 2017 WL 4106071, at *3 (D. Haw. Sept. 15, 2017) ("An allegation that a prison official saw a pretrial detainee be assaulted but failed to intervene states a plausible Fourteenth Amendment failure to protect claim." (citation omitted)).  "To prevail on a failure to intervene claim, a plaintiff must show: (1) that the defendant failed or refused to intervene when a constitutional violation took place in his or her presence or with his or her knowledge; and (2) there was a realistic and reasonable opportunity to intervene."  Balliet v. Luzerne County, No. 22-cv-02032, 2024 WL 2275252, at *8 (M.D. Pa. May 20, 2024) (citations and internal quotation marks omitted).  "[T]he duration of the incident is key to determining whether there was a reasonable opportunity [to intervene]."  El v. City of Pittsburgh, 975 F.3d 327, 335 (3d Cir. 2020) (citing Ricks, 891 F.3d at 479).  If "an incident is momentary, its 'brevity' may 'defeat[] [a] . . . failure to protect claim."  See id. (alterations in original) (quoting Ricks, 891 F.3d at 479).

Here, the Court does not construe the complaint as containing a failure to intervene claim relating to Myers's presence when Edwin allegedly kneed Gorrio in the face.  Instead, the Court understands Gorrio to allege that the correctional officers who participated in and otherwise

observed the alleged assault when Edwin took Gorrio to the ground during the strip search failed to intervene in the assault. See Bistrian v. Levi, 696 F.3d 352, 371 (3d Cir. 2012) ("[I]f an officer witnesses an inmate assault and fails to intervene, '[their] actions would seemingly constitute a paradigm case of deliberate indifference.'" (quoting Grieveson v. Anderson, 538 F.3d 763, 778 (7th Cir. 2008))), abrogation on other grounds recognized by Mack v. Yost, 968 F.3d 311, 319 n.7 (3d Cir. 2020). These allegations are sufficient to assert a plausible failure-to-intervene claim. Accordingly, the Court will deny this part of Defendants' motion to dismiss.

### (10)    Eighth Amendment Deliberate Indifference to Serious Medical Needs

Gorrio asserts two (2) purported Eighth Amendment causes of action—"deliberate indifference to health care" and "medical malpractice"—in his complaint, see (Doc. No. 1-1 at 9), which the Court has construed as Section 1983 claims for deliberate indifference to his serious medical needs.[20] The Court has screened Gorrio's claims under Section 1915(e)(2)(B) and will dismiss them because he has failed to state a plausible claim for relief against Defendants.[21]

Initially, the Court notes that regardless of Gorrio's incarceration status on September 27, 2021, i.e., as a pretrial detainee or convicted prisoner, the Court applies the same standard to his deliberate indifference claims. See Thomas v City of Harrisburg, 88 F.4th 275, 281 n.23 (3d Cir.

---

[20]  There is no Section 1983 claim for medical malpractice because allegations of medical malpractice, see supra at 27 n.11, and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation. See Spruill, 372 F.3d at 235.

[21]  Defendants move to dismiss these claims. See (Doc. No. 18 at 22–23). Nevertheless, because the Court understands Gorrio to assert that Defendants were deliberately indifferent to his serious medical needs because he did not receive any medical care following the assault after the strip search or following Edwin kneeing him in the face, and Defendants' arguments do not reflect a similar understanding, the Court has screened Gorrio's deliberate indifference claims rather than reviewed them in the context of analyzing Defendants' motion to dismiss.

2023) (explaining that "the Eighth Amendment protects a prisoner's serious medical needs," the Fourteenth Amendment applies to plaintiff pretrial detainee's deliberate indifference to serious medical needs claim, and courts should apply the same standard to Fourteenth Amendment claims "used to evaluate [deliberate indifference] claims brought under the Eighth Amendment" (citations omitted)); see also Moore v. Luffey, 767 F. App'x 335, 340 & n.2 (3d Cir. 2019) (unpublished) (evaluating deliberate indifference to serious medical needs claim by pretrial detainee under Eighth Amendment standard, declining to address whether new standard applies to these types of claims by pretrial detainees, and discussing similarity of standards under Eighth and Fourteenth Amendments).  Therefore, for Gorrio to state a plausible constitutional claim based on the failure to provide adequate medical treatment, he must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs.  See Farmer v. Brennan, 511 U.S. 825, 835 (1994).

A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  See Farmer, 511 U.S. at 837.  "A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."  Monmouth County Corr. Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotation marks omitted).  A plaintiff properly alleges deliberate indifference "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment."  See Rouse v. Plantier, 182 F.3d 192, 197

(3d Cir. 1999).  A serious medical need exists where "failure to treat can be expected to lead to substantial and unnecessary suffering."  See Colburn v. Upper Darby Twp., 946 F.2d 1017, 1023 (3d Cir. 1991).

In this case, Gorrio's deliberate indifference claims are implausible because he has not sufficiently alleged that he had a serious medical need.  Gorrio does not identify the injuries he suffered due to the alleged assault following the strip search.  Simply stating that he was injured, and that there are photographs depicting his injuries or medical records supporting his injuries, is insufficient because he has not identified the serious medical need that was unaddressed.  Additionally, even though Gorrio claims that he suffered cracked teeth due to Edwin kneeing him in the face, he does not allege that Edwin should have known Gorrio's teeth were cracked and required medical treatment.  See, e.g., Kane v. Hargis, 987 F.2d 1005, 1008–09 (4th Cir. 1993) (concluding that plaintiff's allegations that she suffered "cracked teeth, a cut nose, and a bruised face" were not sufficiently serious medical needs in part because "there [was] no indication that these injuries required immediate medical treatment").  Accordingly, the Court will dismiss Gorrio's deliberate-indifference-to-serious-medical-needs claims for the failure to state a claim under Section 1915(e)(2)(B)(ii).

(11)    **Eighth Amendment Deliberate Indifference to Safety**

Gorrio's Eighth Amendment deliberate indifference to safety claim apparently relates to his belief that he was subjected to excessive force and Defendants failed to intervene to stop the use of excessive force.  See (Doc. No. 1-1 at 9).  As such, this claim is duplicative of his other claims, and the Court will dismiss it under Section 1915(e)(2)(B)(ii).

### (12)    Eighth Amendment Conditions of Confinement

Defendants move for dismissal of Gorrio's conditions-of-confinement claims because his allegations about the "search and restraint . . . do not rise to the level of a constitutional violation," and his "averments fail to show the requisite extremes of deprivation[ insofar as] his cell was lawfully searched and he was confined after a report he had been fighting."  See (Doc. No. 18 at 24–25).  The Court will grant this part of Defendants' motion only because it is unclear which factual allegations in the complaint support Gorrio's claims about the conditions of his confinement.  He asserts that he was housed "in less than humane conditions," see (id. at 9), but he does not describe any of those conditions in the rest of his complaint.  Even if he had described those conditions, the Court would dismiss this claim because Gorrio does not allege whether he was a pretrial detainee or convicted prisoner while at DCP, and his incarceration status affects the standard applicable to ascertaining the plausibility of his claims.  See, e.g., Tressler v. Centre County, No. 24-cv-00456, 2024 WL 4989315, at *8–9 (M.D. Pa. Dec. 5, 2024) (explaining different standards for analyzing conditions-of-confinement claims for convicted prisoners under the Eighth Amendment and pretrial detainees under the Fourteenth Amendment).  Accordingly, the Court will grant this part of Defendants' motion and will dismiss Gorrio's conditions-of-confinement claims.

### (13)    Eighth Amendment Obstruction of Justice

Defendants move for dismissal of Gorrio's purported Eighth Amendment claims for obstruction of justice against them.  See (Doc. No. 18 at 23–24).  They point out that there is no cause of action under Section 1983 for obstruction of justice.  See (id. at 23).  Defendants also contend that Gorrio lacks standing to bring any criminal charges.  See (id.).  The Court agrees with Defendants that Gorrio has failed to state a plausible claim for relief.

There is no cause of action for obstruction of justice under Section 1983. See Chavez v. Villanueva, 699 F. Supp. 3d 844, 859 n.8 (C.D. Cal. 2023) ("[A]lthough Plaintiff raises . . . a claim under Section 1983, obstruction of justice is a criminal charge that does not provide for a private cause of action." (citation omitted)); Peterson v. Smith, No. 18-cv-12838, 2021 WL 1556863, at *6 (E.D. Mich. Feb. 1, 2021) ("[T]here is no constitutional private cause of action for obstruction of justice."), report and recommendation adopted, 2021 WL 822496 (E.D. Mich. Mar. 4, 2021); see also Bennett v. Maier, No. 97-cv-03555, 1998 WL 386129, at *4 (E.D. Pa. July 7, 1998) ("No civil cause of action for obstruction of justice exists under either federal law or the law of the state of Pennsylvania." (citations and internal quotation marks omitted)). To the extent that Gorrio is relying on the federal criminal statute for obstruction of justice, 18 U.S.C. § 1503, there is no private cause of action under this statute. See Jung v. Bank of Am., N.A., No. 16-cv-00704, 2016 WL 5929273, at *3 (M.D. Pa. Aug. 2, 2016) (explaining that plaintiff's "reliance on certain federal criminal statutes," including Section 1503, "is entirely misplaced, as no private right of action exists" under this statute); Wolk v. United States, No. 00-cv-06394, 2001 WL 1735258, at *7 (E.D. Pa. Oct. 25, 2021) (concluding that plaintiff failed to state a plausible claim under Section 1503 because it "create[s] criminal penalties not civil ones and accordingly, federal courts have not recognized a private cause of action under [it]"), aff'd sub nom. Wolk v. Nat'l Transp. Safety Bd., 45 F. App'x 188 (3d Cir. 2002) (unpublished); cf. Ballard v. City of Phila., 541 F. App'x 143, 144–45 (3d Cir. 2013) (unpublished) (stating that no civil cause of action for obstruction of justice exists under Pennsylvania law). Accordingly, the Court will dismiss Gorrio's obstruction-of-justice claim.[22]

---

[22] The Court does not understand Gorrio to attempt to assert an obstruction-of-justice claim under 42 U.S.C. § 1985(2). A proper claim under this section requires at plaintiff to allege either: (1) "a conspiracy to deter by force, intimidation, or threat, any party or witness in any court in

b.      **State-Law Claims**

(1)      **Breach of Contract/Breach of the Covenant of Good Faith/Breach of Contract "Implied Per Se"**

Defendants move for dismissal of Gorrio's three (3)-contract related claims—breach of contract, "breach of the covenant of good faith," and "breach of contract implied per se"— because Gorrio "fail[ed] to aver the existence of any contractual relationship or commercial transaction, express or implied" that could support these claims.  See (Doc. No. 18 at 26).  The Court agrees.

There are "three elements are necessary to plead a cause of action for breach of contract: (1) the existence of a contract, including its essential terms, (2) a breach of the contract, and (3) resultant damages."  See Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. L. Firm of Malone Middleman, P.C., 137 A.3d 1247, 1258 (Pa. 2016).  Gorrio appears to base his breach of contract claim on Defendants' alleged failure to "perform their duties."  See (Doc. No. 1-1 at 10– 11).  This allegation is wholly insufficient to plead a plausible breach of contract claim because Gorrio has not pleaded the existence of any contractual relationship between him and Defendants.[23]  Accordingly, the Court will dismiss Gorrio's breach of contract claim.

As for Gorrio's claim for breach of the covenant of good faith (and fair dealing), he has failed to state a plausible claim for relief because, "[u]nder Pennsylvania law, a claim for breach of the implied covenant of good faith and fair dealing is subsumed in a breach of contract claim."

_____

the United States from attending such court, or from testifying in any matter pending therein"; or (2) "a conspiracy with the purpose of impeding, hindering, or obstructing, or defeating in any manner, the due course of any justice in any State or Territory, with intent to deny any citizen the equal protection of the laws."  See 42 U.S.C. § 1985(2).

[23] As Dauphin County employees, Defendants' contracts related to their employment at DCP would be between them and Dauphin County.

See Davis v. Wells Fargo, 824 F.3d 333, 352 (3d Cir. 2016) (quoting Burton v. Teleflex Inc., 707 F.3d 417, 432 (3d Cir. 2013); LSI Title Agency, Inc. v. Evaluations Servs., Inc., 951 A.2d 384, 392 (Pa. Super. Ct. 2008) (internal quotation marks omitted)). Therefore, Gorrio cannot "maintain an independent cause of action for breach of the covenant of good faith and fair dealing under Pennsylvania law" absent a sufficiently pleaded breach of contract claim. See Davis, 824 F.3d at 352. Since Gorrio has not sufficiently pleaded a breach of contract claim, the Court will also dismiss his breach of the covenant of good faith and fair dealing claim.

Regarding Gorrio's purported cause of action for "breach of contract implied per se," it does not appear that such a claim exists in the Commonwealth of Pennsylvania (or any other state). Nevertheless, the Court has construed this claim as if Gorrio asserts a breach of an implied contract. "The essential elements of breach of implied contract are the same as an express contract, except the contract is implied through the parties' conduct, rather than expressly written." Enslin v. The Coca-Cola Co., 136 F. Supp. 3d 654, 675 (E.D. Pa. 2015), aff'd sub nom. Enslin v. Coca-Cola Co., 739 F. App'x 91 (3d Cir. 2018) (unpublished). "Under Pennsylvania law, an implied contract arises when parties agree on the obligation to be incurred, but their intention, instead of being expressed in words, is inferred from the relationship between the parties and their conduct in light of the surrounding circumstances." Oxner v. Cliveden Nursing & Rehab. Ctr. PA, L.P., 132 F. Supp. 3d 645, 649 (E.D. Pa. 2015). An actual "meeting of the minds" is unnecessary, as it is the parties' "outward and objective manifestations of assent, as opposed to their undisclosed and subjective intentions, that matter." See Ingrassia Constr. Co., Inc. v. Walsh, 486 A.2d 478, 482–83 (Pa. Super. Ct. 1984).

Once again, Gorrio has failed to plead the essential elements of a breach of implied contract claim. He does not identify the alleged implied contract or the terms of the contract.

Gorrio appears to aver that Defendants have breached an implied contract by "disregarding the letter of [DCP] policy." See (Doc. No. 1-1 at 11). However, Gorrio does not include any factual allegations indicating what the DCP policies are or, assuming arguendo that the DCP policies could be contractual in nature, how he is a party to such a contract.[24] Accordingly, the Court will dismiss Gorrio's breach of implied contract claim.

### (2) Assault & Battery, IIED, False Imprisonment, and False Misrepresentation

Defendants move to dismiss Gorrio's state-law claims for assault and battery, IIED, false imprisonment, and false/fraudulent misrepresentation because they are barred by the PSTCA. See (Doc. No. 18 at 26). As explained above, Defendants are mistaken to the extent that Gorrio asserts these claims against them in their individual capacities. Accordingly, the Court will deny Defendants' motion to dismiss these state-law claims. However, the Court will dismiss Gorrio's false misrepresentation claim under Section 1915(e)(2)(B)(ii) simply because he has not, inter alia, alleged any statement or representation made by Defendants which was false. See Bouriez v. Carnegie Mellon Univ., 585 F.3d 765, 771 (3d Cir. 2009) (explaining that fraudulent

---

[24] To the extent that Gorrio somehow asserts that the DCP policies constitute a contract and he is a third-party beneficiary to that contract, his allegations would still be insufficient:

> "[I]n order for a third party beneficiary to have standing to recover on a contract" under Pennsylvania law "both contracting parties must have expressed an intention that the third party be a beneficiary, and that intention must have affirmatively appeared in the contract itself." Scarpitti v. Weborg, 609 A.2d 147, 149 (Pa. 1992). [Plaintiff] has not pointed to any affirmative statements in . . . the relevant [prison] policies giving . . . prisoners the right to enforce the terms of the documents as third-party beneficiaries. The only statements [Plaintiff] has cited for this purpose are general precatory statements at the beginning of the documents indicating that correctional staff are supposed to act in ways that help inmates and the community; these statements do not affirmatively give inmates the right to enforce the terms of the documents as third-party beneficiaries.

See Walker v. Smith, No. 23-cv-00966, 2024 WL 3969692, at *6 (M.D. Pa. Aug. 28, 2024).

misrepresentation claims under Pennsylvania law have the following six (6) elements: "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance." (citation omitted)).

**B.    Additional Screening of Claims Under Section 1915(e)(2)(B)**

**1.    Gorrio's Request for Injunctive Relief**

Gorrio seeks an injunction stating: "Permanent injunctions to all care custody and control policies at [DCP] to ensure the safety and security of all inmates." See (Doc. No. 1-1 at 11).  The Court will dismiss this claim for injunctive relief.

Putting aside the fact that Gorrio's request for injunctive relief is vague and unclear, his request is specific to the DCP and individuals employed there.  Gorrio is no longer incarcerated at DCP; instead, he is currently incarcerated at Pennsylvania State Correctional Institution Pine Grove.  (Doc. No. 14).  "A prisoner's transfer from the prison complained of generally moots [their] claims for prospective injunctive relief." Conway v. Rivello, No. 24-cv-00427, 2025 WL 308129, at *6 (M.D. Pa. Jan. 27, 2025) (citing Sutton v. Rasheed, 323 F.3d 236, 248 (3d Cir. 2003), as amended (May 29, 2003); Abdul-Akbar v. Watson, 4 F.3d 195, 206 (3d Cir. 1993)).  Accordingly, the Court will dismiss Gorrio's request for injunctive relief because it was mooted upon his transfer from DCP.

**2.    Gorrio's Claims Against Doe Defendants**

Gorrio names several Doe Defendant in his complaint: the Doe Board Members; Doe Commissioners; Doe Solicitors; Doe Medical Personnel; and Doe Correctional Officials.  See (Doc. No. 1-1 at 2).  The Court will dismiss any Section 1983 claims against the Doe Medical

Personnel because Gorrio does not include any factual allegations which would implicate them in those claims.  See Rode, 845 F.2d at 1207 (requiring allegations of personal involvement for cognizable claim under Section 1983).  He also has not alleged facts describing their involvement in his remaining state-law claims, i.e., IIED, assault and battery, false imprisonment, and false/fraudulent misrepresentation.

As for Gorrio's claims against the Doe Board Members, Doe Commissioners, and Doe Solicitors, he has not averred facts showing that they personally participated in any alleged constitutional violation to sustain a Section 1983 claim against them.  In addition, like his claims against Briggs, Gorrio does not include sufficient allegations in his complaint to establish supervisory liability against them under Section 1983.  Further, as with the Doe Medical Personnel, Gorrio does not allege any facts that would link them to his remaining state-law tort claims.  Therefore, the Court will dismiss Gorrio's claims against the Doe Board Members, Doe Commissioners, and Doe Solicitors.

Finally, regarding Gorrio's claims against the Doe Correctional Officials, his supervisory liability claims against the Doe lieutenants, captains, and sergeants fail for the same reasons as his Section 1983 and state-law claims against the Doe Board Members, Doe Commissioners, and Doe Solicitors.  Similarly, to the extent Gorrio asserts Section 1983 and state-law claims against the Doe Correctional Officers, the Court's rulings on those claims against Defendants apply equally to Gorrio's claims against the Doe Correctional Officers.

### 3.    The Freedom of Information Act

Gorrio alleges that his mail was duplicated in violation of the Freedom of Information Act ("FOIA").  See (Doc. No. 1-1 at 6).  Gorrio's FOIA claim fails for three reasons.  First, Gorrio cannot maintain a FOIA action against individually named defendant because FOIA

creates disclosure obligations for federal agencies but does not impose individual liability on government personnel.  See Kaplan v. Ebert, 648 F. App'x 177, 180 (3d Cir. 2016) (unpublished).  Indeed, courts have consistently held that individual governmental officials are not properly named as defendants in FOIA lawsuits.  See, e.g., Nelson v. United States, No. 15-cv-01696, 2015 WL 6501243, at *4 (M.D. Pa. Oct. 27, 2015); Martinez v. Bureau of Prisons, 444 F.3d 620, 624 (D.C. Cir. 2006).  Second, money damages—the remaining relief Gorrio seeks to recover in his complaint—"are unavailable under FOIA."  See Kaplan, 648 F. App'x at 180. Third, the complaint is devoid of factual averments from which an inference could be drawn that Gorrio submitted a proper FOIA request for "records."  Instead, Gorrio complains about the allegedly improper copying of his mail.  His complaint does implicate the scope and reach of the FOIA.  As such, the Court will dismiss any FOIA claim.

### 4.    18 U.S.C. § 2510

In addition to complaining that the copying of his mail constituted a FOIA violation, Gorrio asserts that Defendants violated 18 U.S.C. § 2510, which subjects them to "an indemnification of $1,000 per day per parcel of mail or $10,000 per parcel per day[,] or the greater of the two."  See (Doc. No. 1-1 at 6).  Gorrio cannot proceed with a civil claim based on Section 2510.  In the first place, Section 2510 merely provides definitions for certain terms used in the Federal Wiretap Act, 18 U.S.C. §§ 2510–23 ("FWA"), so it cannot be the basis for any civil claim.

To the extent that Gorrio attempts to raise a claim under the FWA, he has not alleged sufficient facts to establish a plausible claim at this time.  The FWA, inter alia, prohibits individuals from intentionally intercepting any wire, oral, or electronic communication.  See 18 U.S.C. § 2511(1) ("[A]ny person who . . . intentionally intercepts, endeavors to intercept, or

procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic

communication . . . shall be punished as provided in subsection (4) or shall be subject to suit as

provided in subsection (5)."); Bartnicki v. Vopper, 532 U.S. 514, 523 (2001) (discussing scope of

FWA).  If an individual's communication is "intercepted, disclosed, or intentionally used," that

individual can file a civil action seeking injunctive relief and monetary damages.  See 18 U.S.C.

§ 2520.  "A plaintiff pleads a prima facie case under the [FWA] by showing that the defendant:

(1) intentionally (2) intercepted, endeavored to intercept or procured another person to intercept

or endeavor to intercept (3) the contents of (4) an electronic communication, (5) using a device."

In re Nickelodeon Consumer Priv. Litig., 827 F.3d 262, 274 (3d Cir. 2016).  In addition, the

plaintiff "must have a reasonable expectation of privacy in the intercepted communication itself."

See Miller v. Kruzik, No. 06-cv-00463, 2009 WL 10718510, at *8 (M.D. Pa. Feb. 23, 2009)

(citing cases).

It is unclear from the complaint the precise type of communication Gorrio claims was

intercepted.  More specifically, it is unclear whether he claims that DCP copied his physical mail

and uploaded it so he can view it on his tablet, or whether he claims that he received e-mail

messages on his tablet and had those messages copied.  Additionally, Gorrio does not allege who

copied his mail, even if it was one of the Doe Defendants.  The identities of the individuals

Gorrio believes are responsible for allegedly unlawfully copying his mail is particularly

important because the FWA states that a means of intercepting an electronic communication does

not fall under the definition for an "electronic, mechanical, or other device" if it is used "by an

investigative or law enforcement officer in the ordinary course of [their] duties."  See 18 U.S.C.

§ 2510(5)(a)(ii); see also id. § 2510(7) ("'Investigative or law enforcement officer' means any

officer of the United States or of a State or political subdivision thereof, who is empowered by

law to conduct investigations of or to make arrests for offenses enumerated in this chapter . . . .").

"Corrections officers and similar jail officials count as 'investigative or law enforcement officers'

because of their ability to investigate crimes or rule violations that occur where they work."

United States v. Green, No. 12-cr-00083S, 2016 WL3610331, at *13 (W.D.N.Y. July 6, 2016)

(citations omitted); see also United States v. Sababu, 891 F.2d 1308, 1328 (7th Cir. 1989)

("[P]rison officials are 'investigative or law enforcement officers' within the meaning of §

2510(7).") (citations omitted); United States v. Clark, 651 F. Supp. 76, 79 (M.D. Pa. 1986)

("[T]he court finds that prison employees fall within the category of investigative officers

defined in [Section 2510(7)].").  Overall, because Gorrio's allegations are insufficient to state a

plausible claim under the FWA against Defendants, the Court will dismiss the claim.

### C.    Leave to Amend

Having determined that some of Gorrio's numerous Section 1983 and state-law claims

are subject to dismissal, the Court must determine whether to grant him leave to replead those

claims in an amended complaint.  Courts should generally give leave to amend but may dismiss a

complaint with prejudice where leave to amend would be inequitable or futile.  See Fletcher-

Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 252 (3d Cir. 2007) ("[I]n civil

rights cases district courts must offer amendment—irrespective of whether it is requested—when

dismissing a case for failure to state a claim unless doing so would be inequitable or futile."); see

also Grayson, 293 F.3d at 108 ("When a plaintiff does not seek leave to amend a deficient

complaint after a defendant moves to dismiss it, the court must inform the plaintiff that [they

have] leave to amend within a set period of time, unless amendment would be inequitable or

futile.").  "In determining whether [amendment] would be futile, the district court applies the

same standard of legal sufficiency as [it] applies under Fed. R. Civ. P. 12(b)(6)." In re
Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997).

Based on the Court's analysis above, the Court finds that it would be futile for Gorrio to
attempt to amend the following claims: (1) Section 1983 respondeat superior claim; (2) Section
1983 claims for punitive damages against Defendants in their official capacities; (3) Section
1983 Fifth Amendment due-process claims; (4) Section 1983 Fourteenth Amendment due-
process claims pertaining to DCP's grievance policies and the manner in which Gorrio's
grievances were handled; (5) Section 1983 Fourteenth Amendment claims pertaining to the
destruction of his legal paperwork (unrelated to his denial-of-access-to-the-courts claims); (6)
Section 1983 Fourth Amendment unlawful-search-and-seizure claims; (7) Section 1983 claims
for sexual harassment and sexual assault; (8) Section 1983 claims for medical malpractice; (9)
Section 1983 claims for deliberate indifference to his safety; (10) Section 1983 claims for
obstruction of justice; (11) FOIA claims; (12) claims for injunctive relief; (13) state-law claims
for breach of contract, breach of the covenant of good faith and fair dealing, and breach of
contract "implied per se"; (14) state-law tort claims for contributory negligence and reckless
endangerment of another person; (15) state-law tort claims against Defendants in their official
capacities for negligence, negligent endangerment of another person, medical malpractice, IIED,
assault and battery, false imprisonment, and false/fraudulent misrepresentation; and (16) state-
law tort claims against Defendants in their individual capacities for negligence, negligent
endangerment of another person, and medical malpractice.  The Court will permit Gorrio to
amend the following claims: (1) Section 1983 supervisory liability claims against Briggs, the
Doe Board Members, Doe Commissioners, Solicitor's Office Officials, and John and Jane Doe
DCP lieutenants, captains, and sergeants; (2) Section 1983 First Amendment free-speech claims;

(3) Section 1983 Fourteenth Amendment due-process claims relating to the alleged denial of access to the courts and the forty-one (41) days he spent in the RHU prior to receiving a disciplinary hearing; (4) Section 1983 excessive-force claims; (5) Section 1983 deliberate-indifference-to-serious-medical-needs claims; (6) Section 1983 claims pertaining to his conditions of confinement; (7) state-law claims for false/fraudulent misrepresentation; and (8) FWA claims.

## IV.    CONCLUSION

For the reasons stated above, the Court will grant Defendants' motion to dismiss in part and deny it in part.  The Court will also grant Gorrio leave to file an amended complaint as to only those claims identified in the prior section of this Memorandum as amendable claims.  An appropriate Order follows.[25]

s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania

---

[25]  This Order will provide Gorrio with additional instructions on the filing of an amended complaint.